UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
                                                    :

ARE-EAST RIVER SCIENCE PARK, LLC,        :
                                                    :

                                Plaintiff,    :

                                                    :   Case No. 24-cv-05956 (NRB)
                      -against-              :

                                                      :   **Oral Argument Requested**

NEW YORK CITY HEALTH AND HOSPITALS      :
CORPORATION and NEW YORK CITY ECONOMIC  :
DEVELOPMENT CORPORATION,              :

                                     Defendants.   :
------------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

MURIEL GOODE-TRUFANT
Corporation Counsel of the
  City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007

Of Counsel:
Robert Funkhouser
Leslie Spitalnick
David Angelatos
Assistant Corporation Counsel
(212) 356-2489
dangelat@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ......................................................................... 1

FACTS ................................................................................................................ 2

    I.     THE COMPLAINT'S ALLEGATIONS ................................................ 3

         A.    *Background* ........................................................................... 3

         B.    *The Basis of ARE's Claims* ................................................. 4

    II.    THE CRITERIA REFERENCED IN THE FLAHERTY LETTER ....................................................................................... 6

    III.   THE RELEVANT GROUND LEASE TERMS ................................. 6

         A.    *The Original Ground Lease* .................................................. 6

         B.    *The Seventh Amendment* ...................................................... 7

         C.    *The Tenth Amendment* .......................................................... 7

         D.    *The Eleventh Amendment* ..................................................... 8

LEGAL STANDARDS ...................................................................................... 9

DISCUSSION .................................................................................................... 10

    I.     ARE HAS NOT STATED A CLAIM FOR FRAUDULENT INDUCEMENT UNDER RULES 12(b)(6) AND 9(b). ......................................................................... 10

         A.    *Flaherty's Statement that the Floodwall Criteria "Should Not Change" Is the Only Purported Misrepresentation, Omission, or Act of Concealment that ARE Alleges with the Particularity Necessary to Satisfy Rule 9(b).* ......................... 11

         i.    The Complaint Does Not Allege Omission or Concealment with Particularity. ............................................... 11

         ii.   The Complaint Does Not Plead an Alleged Duty to Disclose with Particularity. ................................................... 12

iii.   The Complaint Pleads Only One Alleged Misrepresentation with Particularity: Flaherty's Statement that the Criteria "Should Not Change." ...............................13

B.   *The Complaint Fails to State a Claim for Fraud, Because ARE Fails to Plausibly Plead an Actionable Misrepresentation or Reasonable Reliance.* ...............................................14

i.   H+H's Representation that the Criteria "Should Not Change" Is a Nonactionable Statement of Future Expectations. ...............................14

ii.   Flaherty's Representation that the Floodwall Criteria "Should Not Change" Is Too Indefinite and Ambiguous to Constitute an Actionable Misrepresentation or to Support Reasonable Reliance. ...............................15

iii.   The Cooperation Clause Precludes Reasonable Reliance on Alleged Extracontractual Representations of the Floodwall Criteria's Finality. ...............................16

C.   *The Complaint Fails to State a Claim, Because ARE Fails to Plausibly Plead a Bridgestone Exception to the Bar on Fraudulent Inducement Claims.* ...............................19

II.   ARE HAS NOT STATED A CLAIM FOR BREACH OF THE IMPLIED COVENANT UNDER RULE 12(b)(6). ...............................22

A.   *The Complaint Fails to State an Implied-Covenant Claim, Because ARE Fails to Plausibly Plead that H+H Deprived ARE of the Benefit of Its Bargain.* ...............................22

B.   *The Complaint Fails to State an Implied-Covenant Claim, Because that Claim Relies on H+H's Conduct During Negotiations of the Proposed Thirteenth Amendment.* ...............................23

**Page**

       C.   *The Complaint Fails to State an Implied-Covenant Claim, Because There Is No Contractual Basis to Imply a Covenant that the Floodwall Criteria Could Not Change After October 2020.* ..............................................23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Adler v. Berg Harmon Assocs.*,
   816 F. Supp. 919 (S.D.N.Y.1993) ............................................................................................12

*Amuze v. Better Bus. Bureau*,
   2023 N.Y. Misc. LEXIS 958 (N.Y. Co. Sup. Ct. Mar. 3, 2023)............................................15

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
   690 F.3d 98 (2d Cir. 2012)........................................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).........................................................................................................11

*Bank of N.Y. v. Sasson*,
   786 F. Supp. 349 (S.D.N.Y. 1992) ...........................................................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................9

*Brainbuilders LLC v. EmblemHealth, Inc.*,
   2022 U.S. Dist. LEXIS 140874 (S.D.N.Y. Aug. 8, 2022).......................................................10

*Bridgestone/Firestone v. Recovery Credit Servs.*,
   98 F.3d 13 (2d Cir. 1996).....................................................................................................13, 19

*Brock Cap. Grp. LLC v. Siddiqui*,
   2022 U.S. Dist. LEXIS 101738 (S.D.N.Y. June 7, 2022) (Buchwald, J.) ..................13, 14, 18

*Butvin v. DoubleClick, Inc.*,
   2001 U.S. Dist. LEXIS 2318 (S.D.N.Y. Mar. 5, 2001) ...........................................................22

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*,
   117 F.3d 655 (2d Cir. 1997).......................................................................................................12

*CapLOC, LLC v. McCord*,
   2018 U.S. Dist. LEXIS 99321 (S.D.N.Y. June 12, 2018).........................................................16

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir. 2003)...........................................................................................................19

*Chimart Assocs. v. Paul*,
   66 N.Y.2d 570 (1986) ................................................................................................................15

**Cases**                                                                                          **Pages**

*Clifton v. Vista Computer Services, LLC*,
  2002 U.S. Dist. LEXIS 12977 (S.D.N.Y. July 16, 2002) ......................................17

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
  252 F. Supp. 3d 274 (S.D.N.Y. 2017)................................................................18

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)................................................................................9

*D.S. Magic Tech, LLC v. 2720 LLC*,
  2015 N.Y. Misc. LEXIS 4174 (1st Dep't Nov. 19, 2019) ....................................15

*Dembeck v. 220 Cent. Park S., LLC*,
  33 A.D.3d 491 (2006) ....................................................................................12

*Deutsche Bank Nat'l Trust Co. v. Sinclair*,
  68 A.D.3d 914 (2d Dep't 2009) ......................................................................14

*Dragon Inv. Co. II LLC v. Shanahan*,
  49 A.D.3d 403 (1st Dep't 2008) ......................................................................14

*DynCorp v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002)..............................................................21

*In re Enron Corp.*,
  2005 U.S. Dist. LEXIS 2134 (S.D.N.Y. Feb. 14, 2005)......................................21

*Fierro v. Gallucci*,
  2010 U.S. Dist. LEXIS 27664 (E.D.N.Y. Mar. 24, 2010) ....................................15

*Fishbaum v. Liz Claiborne, Inc.*,
  1999 U.S. App. LEXIS 18155 (2d Cir. July 27, 1999)........................................16

*Four Finger Art Factory, Inc. v. DiNicola*,
  2000 U.S. Dist. LEXIS 1221 (S.D.N.Y. Feb. 9, 2000)........................................21

*George Backer Mgmt. Corp. v. Acme Quilting Co.*,
  46 N.Y.2d 211 (N.Y. 1978) ............................................................................15

*Gould v. Berk & Michaels, P.C.*,
  1991 U.S. Dist. LEXIS 10454 (S.D.N.Y. July 29, 1991) ....................................12

*Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.*,
  2018 U.S. Dist. LEXIS 68792 (E.D.N.Y Apr. 23, 2018) ....................................12

**Cases**                                                                                          **Pages**

*Hollander v. Cayton*,
    145 A.D.2d 605 (2d Dep't 1988) .................................................................15

*Holy Props. v. Cole Prods.*,
    87 N.Y.2d 130 (1995) ...............................................................................23

*Humble Oil & Ref. Co. v. Jaybert Esso Serv. Station, Inc.*,
    30 A.D.2d 952 (1st Dep't 1968) ................................................................16

*Inspired Capital, LLC v. Condé Nast*,
    803 Fed. App'x 436 (2d Cir. 2020)............................................................11

*Int'l Fin. Corp. v. Carrera Holds. Inc.*,
    82 A.D.3d 641 (1st Dep't 2011) ................................................................15

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
    29 F.4th 118 (2d Cir. 2022) .....................................................................24

*Koch Indus., Inc. v. Hoechst AG*,
    727 F. Supp. 2d 199 (S.D.N.Y. 2010).................................................20, 21

*Kraus USA, Inc. v. Magarik*,
    2020 U.S. Dist. LEXIS 83481 (S.D.N.Y. May 12, 2020)...........................12

*Kriegel v. Donelli*,
    2014 U.S. Dist. LEXIS 90086 (S.D.N.Y. 2014)........................................20

*Lam v. Am. Express Co.*,
    265 F. Supp. 2d 225 (S.D.N.Y. 2003)......................................................21

*M/A-Com Security Corp. v. Galesi*,
    904 F.2d 134 (2d Cir. 1990).....................................................................24

*Malmsteen v. Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007).................................................11, 12

*Mariano v. CVI Invs. Inc.*,
    809 F. App'x 23, 27 (2d Cir. 2020) ..........................................................17

*Michael Rapaport & Michael David Prods. v. Barstool Sports, Inc.*,
    2021 U.S. Dist. LEXIS 119045 (S.D.N.Y. June 25, 2021)........................17

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993).....................................................................13

**Cases**                                                                        **Pages**

*Moran v. Erk*,
    11 N.Y.3d 452 (2008) ...................................................................................23

*Osan Ltd. v. Accenture Llp*,
    454 F. Supp. 2d 46 (E.D.N.Y. 2006) .......................................................18

*Pacnet Network Ltd. v. KDDI Corp.*,
    78 A.D.3d 478 (1st Dep't 2010) ...............................................................14

*People v. Minott*,
    94 N.Y.2d 784 (1999) ...............................................................................16

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
    449 F. App'x 57 (2d Cir. 2011) ................................................................18

*President Container Grp. 11, LLC v. Systec Corp.*,
    467 F. Supp. 3d 158 (S.D.N.Y. 2020).......................................................14

*Remuda Jet Five LLC v. Empresa Brasileira De Aeronautica, S.A.*,
    2012 U.S. Dist. LEXIS 48736 (S.D.N.Y. 2012)......................................19

*Republic Nat'l Bank v. Hales*,
    75 F. Supp. 2d 300 (S.D.N.Y. 1999),
    *aff'd*, *HSBC Bank v. Hales*, 4 Fed. App'x 15 (2d Cir. 2001)................16

*Revonate Mfg., LLC v. Acer Am. Corp.*,
    2013 U.S. Dist. LEXIS 12619 (S.D.N.Y. Jan. 18, 2013).........................21

*Rizkallah v. Forward Air, Inc.*,
    2009 U.S. Dist. LEXIS 86999 (S.D.N.Y. Sept. 21, 2009)......................15

*Rowe v Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62 (1978) .................................................................................23

*Sehera Food Servs. Inc. v. Empire State Bldg. Co. L.L.C.*,
    74 A.D.3d 542 (1st Dep't 2010) ...............................................................12

*Sequoia Healthcare Servs., LLC v. Essex Capital Corp.*,
    2018 U.S. Dist. LEXIS 116265 (S.D.N.Y. July 11, 2018) .........................19, 20, 21

*Singh v. City of N.Y.*,
    40 N.Y.3d 138 (2023) ...........................................................................23, 25

*SNS Bank, N.V. v. Citibank, N.A.*,
    7 A.D.3d 352 (1st Dep't 2004) .................................................................23

**Cases**            **Pages**

*Swersky v. Dreyer & Traub*,
   219 A.D.2d 321 (1st Dep't 1996) ........................................................12

*Van Kleeck v. Hammond*,
   25 A.D.3d 941 (3d Dep't 2006) ..........................................................15

*Vinas v. Chubb Corp.*,
   499 F. Supp. 2d 427 (S.D.N.Y. 2006) ................................................15

*Warner Theatre Assocs. Ltd. Pshp. v. Metropolitan Life Ins. Co.*,
   1997 U.S. Dist. LEXIS 17217 (S.D.N.Y. 1997),
   *aff'd*, 149 F.3d 134 (2d Cir. 1998) ....................................................23

*Wayland Inv. Fund, LLC v. Millenium Sea Carriers, LLC*,
   111 F. Supp. 2d 450 (S.D.N.Y. 2000) ................................................24

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y. 1997) ....................................................11, 12

**Statutes**

Fed. R. Civ. P. 9(b) ..............................................................9, 10, 13

F. R. Civ. P. 9(g) ........................................................................19

Fed. R. Civ. P. 12(b)(6)........................................................1, 9, 10, 21

**Other Authorities**

*City Planning Commission Public Meeting*, YouTube,
   https://www.youtube.com/live/9GPlXlI87pY (last accessed Dec. 9, 2024
   11:51 AM)................................................................................4

Merriam-Webster, https://www.merriam-webster.com/dictionary/should (last
   accessed Nov. 18, 2024 1:44 PM) ......................................................14

Defendants New York City Health and Hospitals Corporation ("H+H") and New York City Economic Development Corporation ("NYCEDC" and, together with "H+H," "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint (the "Complaint") of plaintiff ARE-East River Science Park, LLC ("ARE") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## <u>PRELIMINARY STATEMENT</u>

ARE pleads this contract dispute as a fraud. The parties' written agreement is a commercial ground lease amended twelve times in writing (as amended, the "Ground Lease"). Pursuant to the Ground Lease, ARE developed two buildings for commercial life science uses on H+H's Bellevue Hospital Campus in Midtown East. The Ground Lease also granted ARE an option (the "Option") to lease an adjacent site and develop a third building (the "North Tower"), which the parties have been negotiating for a decade. During those negotiations, the parties discussed designing the North Tower's foundation to function as part of a broader community floodwall. ARE now claims that Defendants' recent changes to certain floodwall design criteria prevented ARE from closing on the Option before its November 3, 2024 deadline, leading ARE to bring this case.

All three of ARE's claims—two for fraudulent inducement and one for breach of the implied covenant of good faith and fair dealing—seek to enforce an extracontractual representation that the floodwall's design criteria "should not change." This is the only alleged misrepresentation that ARE pleads with particularity. However, under New York law, such promissory statements about future events are not actionable as fraud; they are actionable, if at all, only in contract.

The Ground Lease also precludes fraud and implied-covenant claims based on Defendants' alleged misstatement. The Ground Lease includes a "No Other Representations" clause, a merger clause, a provision limiting contract modifications to signed documents, and a provision in the Ground Lease's Tenth Amendment (the "Cooperation Clause") bearing directly on the subject of

the alleged misstatement. The Cooperation Clause is the sole Ground Lease provision regarding the floodwall. The Cooperation Clause does not mandate that a floodwall be included in the North Tower or provide that any floodwall design criteria or requirements are final and thus cannot change in the future. Instead, the Cooperation Clause provides that the parties shall "cooperate in good faith <u>to attempt to reach</u> mutually agreeable written parameters related to Landlord's <u>proposed</u> flood mitigation requirements." Ex. 3 § 4(b) (emphasis added).[1] ARE cannot enforce prior inconsistent representations, whether as breach of contract, fraud, or breach of the implied covenant. Accordingly, the Court should dismiss the Complaint in full.

## FACTS

The Complaint asserts three causes of action: (1) that Defendants fraudulently induced ARE to enter into the Ground Lease's Tenth Amendment, (2) that Defendants fraudulently induced ARE to enter into the Ground Lease's Eleventh Amendment, and (3) that H+H breached the implied covenant of good faith and fair dealing. Although ARE's claims, as pleaded, appear to turn on the parties' negotiation of the floodwall related to the proposed North Tower site, ARE does not rely on the Tenth Amendment's Cooperation Clause, which is the sole Ground Lease language on the subject. Instead, ARE alleges that Defendants fraudulently induced ARE's agreement to the Cooperation Clause with misrepresentations and omissions during negotiations. Specifically, ARE alleges that Defendants misrepresented the finality of the October 2020 floodwall design criteria in a December 2020 letter from H+H's Senior Vice President of Capital Design, Christine Flaherty (the "Flaherty Letter"). Ex. 5. Below, Defendants describe the relevant portions of the Complaint, the Flaherty Letter, and the Ground Lease.

---

[1] All exhibits cited in this Memorandum of Law are attached to the Declaration of Jeremy Berman.

## I.  The Complaint's Allegations

### A.  Background

This action arises out of the parties' failure to close on the Option before their November 3, 2024 deadline. Compl. ¶¶ 101, 106, 123. The parties first contracted in 2006, when ARE signed the original Ground Lease (the "Original Ground Lease") with H+H as Landlord and NYCEDC as Lease Administrator. *Id.* ¶ 32-35. The Original Ground Lease provides for ARE's development of two buildings for rental as commercial life sciences space on H+H's Bellevue Hospital campus, as well as for ARE's Option to develop a neighboring "North Tower." *Id.* ¶ 33-34, 41.

ARE alleges that, after development of the two initial buildings, the parties turned to the Option. *Id.* ¶¶ 6-8. Around that time, "the devastating impact of Superstorm Sandy led Defendants to determine it was imperative for the City to erect a floodwall along the FDR East River Drive." *Id.* ¶ 8. "[I]n or around October 2015, H+H approached ARE with a plan to use FEMA funds to build a floodwall running from East 25th to East 30th Street." *Id.* ¶ 10. ARE potentially would be involved only in the portion of the floodwall on the Option parcel. *See id.* ¶¶ 1, 11, 13.

Since then, the parties have been negotiating the proposed floodwall's specifics as part of their broader negotiations of the Option, which ARE exercised on July 24, 2019. *Id.* ¶ 10. ARE alleges that the parties extended the Option closing deadline several times, including in the Tenth and Eleventh Amendments, culminating in a November 3, 2024 deadline "after which ARE would no longer be permitted to develop the Option at all." *Id.* ¶¶ 101, 106, 123. Although the parties attempted to negotiate a further extension as part of a potential Thirteenth Amendment, ARE alleges that those negotiations failed because "it became clear to ARE that the [floodwall] design

criteria were an indecipherable moving target." *Id.* ¶¶ 113, 117-18.[2] Specifically, ARE alleges that, in November 2023, Defendants made changes to the floodwall criteria, contrary to their alleged prior representations that the October 2020 criteria were final and thus would not change. *Id.* ¶¶ 16, 176-77. This action ensued.

### B. *The Basis of ARE's Claims*

ARE's three claims turn on its repeated allegations that "Defendants represented that the October 2020 Criteria were final." *Id.* ¶¶ 136, 155; Pre-Motion Letter at 1-2. At times, the Complaint appears to rely on additional theories of fraud, misrepresentation, omission, and concealment. *See, e.g.*, *id.* ¶¶ 102, 107, 115-16, 121 (alleging misrepresentations, omissions, and/or concealment related to remapping, a seepage wall, the unavailability of the NYCEDC employee responsible for sign off on a particular request, and the involvement of the NYC Department of Design and Construction). But ARE does not specify the nature of these alleged frauds and/or the time, place, manner, or content of Defendants' alleged misrepresentations, omissions, acts of concealment, or duties to disclose.[3]

---

[2] ARE also alleges that it has "miss[ed] the life science bull market," which has "now substantially softened." Compl. ¶ 125. ARE further alleges that NYCEDC has "encouraged and induced other developers to build life science projects in NYC, based on erroneous and exaggerated information about demand and anticipated market growth, which has led to a material overbuilding of life science space in NYC." *Id.*; *see also, e.g.*, *id.* ¶ 6; *November 6th, 2024: City Planning Commission Public Meeting*, YouTube, https://www.youtube.com/live/9GPIXlI87pY (last accessed Dec. 9, 2024 11:51 AM), at 2:09:20-2:20:00 (ARE's testimony in opposition to NYCEDC's efforts to develop nearby life sciences space). Defendants disagree with these characterizations of the life sciences market in New York City. However, ARE's statements indicate that it no longer wants to proceed with the Option on the terms negotiated.

[3] For example, the Complaint's first paragraph alleges that ARE agreed to the Cooperation Clause in part based on alleged misrepresentations (1) that ARE would be reimbursed for floodwall-related costs and (2) that ARE's cooperation regarding the floodwall would not delay the North Tower's development. *Id.* ¶ 1. The Complaint identifies no communications containing the alleged misrepresentations about reimbursement and only two communications containing the alleged misrepresentations about delay. On delay, ARE alleges that, in 2018 and early 2019, H+H's Chief Operating Officer made oral representations that ARE paraphrases as: "H+H did not expect ARE to delay its design or construction of the North Tower pending completion of the floodwall." *Id.* ¶¶ 55, 62. The Complaint then alleges that, later in 2019—after the alleged misrepresentations but long before ARE signed the Tenth or Eleventh Amendments—ARE discovered that there was potential for the floodwall to delay the North Tower's construction (as well as that ARE would not be reimbursed for all of its floodwall-related costs). *Id.* ¶¶ 65-67; *see also id.* ¶ 86. In other words, ARE pleads that, prior to executing the Tenth and Eleventh Amendments, it knew it would not be reimbursed for all costs and that there was potential for delay. Thus, any prior inconsistent statements, even if pled with particularity, cannot be the basis for fraud.

Instead, the Complaint focuses on ARE's allegations that Defendants made "repeated," "express," "definitive," and "unequivocal" misrepresentations that the October 2020 floodwall criteria were "final." *Id.* ¶¶ 1, 13-17, 93, 95, 100, 103, 105-107, 109, 114-116, 118, 122, 134, 136, 137, 141, 143, 153, 155, 156, 160, 162, 166, 176. In support of those allegations, ARE identifies only two specific communications. First, ARE alleges that, in the December 2020 Flaherty Letter, H+H issued the following response to ARE's bolded question,

> [ARE's question:] **Based on your schedule, when in the H+H process will the Community Flood Wall criteria become formally finalized so that no further material criteria will be added and no further material changes will be made?** [Flaherty's response:] The criteria are already settled and, based on existing information and current conditions, *it should not change.* As stated above an engineer will have to perform appropriate quality checks and calculations to refine the existing preliminary designs to ensure they conform to the criteria. *The necessary refinements are more accurately viewed as fine tuning rather than changing the designs as is typical as one moves through the design process to final construction drawings.*

*Id.* ¶ 93 (italics added in Complaint). Second, ARE purports to paraphrase a representation by "Defendants" in the following allegation: "ARE also requested that the parties incorporate the October 2020 Criteria into the 11th Amendment, given Defendants' repeated representations— including during in-person negotiations at EDC's office on October 12, 2022—that they were final." *Id.* ¶ 107. The remainder of the Complaint relies on the former allegation but not the latter. *See id.* ¶¶ 13, 95, 105, 143, 162 (identifying the Flaherty Letter as the basis of ARE's generalized allegations regarding the October 2020 criteria's finality); Pre-Motion Letter at 2 (same). Accordingly, the Flaherty Letter is the crux of ARE's Complaint.

## II. The Criteria Referenced in the Flaherty Letter

Contrary to ARE's allegations, the above-quoted paragraph in the Flaherty Letter does not even address the October 2020 criteria specifically. That paragraph refers only to "[t]he criteria," and the prior paragraph in the Flaherty Letter clarifies that reference:

> [ARE's question:] **Please confirm that the design criteria issued on October 29 supersede any previously shared criteria.** [Flaherty's response:] The design criteria have not changed since they were issued to ARE on April 27, 2020 (Report dated April 26, 2020). To address multiple questions by ARE, further clarifications and redacted versions have been made culminating in the October 29, 2020 correspondence that clarified but did not supersede the prior material shared.

Ex. 5 at 1 (bold in original). Thus, the criteria referenced in the Flaherty Letter expressly are not limited to those set out in the October 2020 correspondence and include those issued in April 2020.

## III. The Relevant Ground Lease Terms

### A. The Original Ground Lease

On December 29, 2006, ARE and H+H executed the Original Ground Lease, which was meant to further "the City's goal of creating additional space in New York City for commercial bioscience companies." Ex. 1 at 10. That agreement established ARE as "Tenant," H+H as "Landlord," and NYCEDC as "Lease Administrator." *Id.* § 1. Essentially, H+H leased to ARE a portion of the Bellevue Hospital campus for the development and sublease of two buildings for commercial life sciences uses over an initial 49-year term, *id.* at 10, and provided for the potential construction of a third building, *id.* § 2.2, known in this litigation as the "North Tower."

The Original Ground Lease expressly limits the parties' rights and obligations to those included in the Original Ground Lease and in written modifications thereto. First, Section 18.2 provides that, other than the representations contained in the Ground Lease, (a) "no representations, statements, or warranties, express or implied, have been made by, or on behalf of,

Landlord or the City with respect to the Premises or the transaction contemplated by this Lease," and (b) "Tenant has relied on no such representations, statements or warranties." Second, Section 31.1 provides that the Ground Lease and its exhibits contain "all of the promises, agreements, conditions, inducements and understandings between Landlord and Tenant concerning the Premises and there are no promises, agreements, conditions, understandings, inducements, warranties or representations, oral or written, expressed or implied, between them other than as expressly set forth herein and therein." Third, Section 41.11 provides that no portion of the Original Ground Lease "shall be changed, modified, altered, waived or terminated except by a written instrument of change, modification, alteration, waiver or termination executed by the other party." Section 41.4 also limits the parties' relationship to one of "landlord and tenant."

### B. The Seventh Amendment

On October 3, 2018, ARE and H+H executed a Seventh Amendment altering the terms for ARE to exercise and then close on the Option. Ex. 2 at 5. The Seventh Amendment also established a "Closing Date" and "Outside Closing Date," *id.* § 3.2, and provided that, if the closing did not occur by those dates, "the right of the Tenant to lease the Option Premises shall terminate with no need for any further documentation or agreement," subject to certain conditions, *id.* § 2.1(d); *see also id.* §§ 3.2, 4.2.

### C. The Tenth Amendment

On July 1, 2021, ARE and H+H executed the Tenth Amendment, which states that ARE "has exercised the Option" and amends "the terms on which the parties may proceed to Closing." Ex. 3 at 2. It extended the Closing Date and Outside Closing Date and allowed potential further extensions to a final deadline of November 3, 2024. *Id.* §§ 2, 6(c)(ii), 6(f)(i)-(ii), 6(g)(i), 7(a)-(c).

This amendment also includes a mutual promise that the parties "cooperate in good faith" regarding a potential floodwall for inclusion in the proposed North Tower's design:

4. **Bellevue Matters**. From and after the Effective Date, the parties shall cooperate in good faith with respect to Landlord's proposed flood mitigation project as follows:

    a. Draft Specified Project Drawings and Analysis. Tenant shall cooperate with Landlord in good faith for purposes of aiding Landlord's review of the Draft Specified Project Drawings and Analysis. In connection with the foregoing, Tenant shall provide any updates to the Draft Specified Project Drawings and Analysis to Landlord as and when such updates may become available from time to time; and

    b. Cooperation. Tenant and Landlord shall cooperate in good faith to attempt to reach mutually agreeable written parameters related to Landlord's proposed flood mitigation requirements in respect of the integration of the Option Premises with adjoining properties leased by Landlord and/or owned by the City.

*Id.* § 4. This is the only portion of the Ground Lease that discusses the floodwall, and it does not reference "final" criteria or requirements or even mandate that floodwall protection ultimately be included in the North Tower's design.

The Tenth Amendment further provides that all references to "the Lease" in the Ground Lease or the exhibits or schedules thereto "shall be deemed to mean the Existing Ground Lease as amended by this Amendment." *Id.* § 11(a). It also provides, "Except to the extent hereinabove modified, the Existing Ground Lease . . . is hereby ratified and confirmed in all respects." *Id.* § 11(b). Thus, the Tenth Amendment became part of the larger Ground Lease and affirmatively ratified and confirmed the Ground Lease provisions limiting the parties' rights and obligations to those included therein. *See* Ex. 1 § 18.2 (No Other Representations), § 31.1 (Entire Agreement), § 41.11 (No Oral Modification).

*D.  The Eleventh Amendment*

On November 3, 2022, ARE and H+H executed an Eleventh Amendment memorializing their agreement to a form of lease containing certain terms for development of the Option premises

if and when the parties closed. Ex. 4 § 1 & at 8-159. For example, the form of lease stated the minimum size of the North Tower. *See id.* at 31, 44 (stating the minimum total rentable square feet and minimum zoning square footage). Like prior amendments, the Eleventh Amendment became part of the larger Ground Lease and affirmatively ratified and confirmed the Ground Lease provisions limiting the parties' rights and obligations to those included therein. *See id.* §§ 3(a)-(b).

## <u>LEGAL STANDARDS</u>

Under Rule 12(b)(6), plaintiffs bear the burden of alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

In most cases, federal courts making the plausibility determination must accept as true all factual allegations contained in a complaint. *Id.* However, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." In all cases, federal courts need not credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Federal courts must be careful not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

In addition to a complaint's well-pleaded factual allegations, the court may also rely on documents incorporated into the complaint by reference, documents "integral" to the plaintiff's claims, matters of which judicial notice may be taken, and "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit." *E.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

## DISCUSSION

ARE is a sophisticated real-estate developer that signed the Original Ground Lease and twelve written amendments after extensive negotiations, portions of which ARE details in its Complaint. Yet ARE's three claims—two for fraudulent inducement and one for breach of the implied covenant of good faith and fair dealing—seek to enforce a promise found nowhere in the Ground Lease: that the floodwall criteria "should not change." *See* Compl. ¶¶ 93, 128-79. That statement cannot support ARE's claims for fraud or its claim for breach of the implied covenant, in part because it is a statement of future intent and because it is inconsistent with the Tenth Amendment provision requiring only that the parties "cooperate in good faith to attempt to reach mutually agreeable written parameters related to Landlord's proposed flood mitigation requirements." Ex. 3 § 4(b). Accordingly, Defendants move to dismiss the Complaint.

## I.     ARE Has Not Stated a Claim for Fraudulent Inducement Under Rules 12(b)(6) and 9(b).

The Court should dismiss ARE's causes of action for fraud. First, ARE alleges no purported misrepresentation, omission, or act of concealment by NYCEDC with particularity and alleges only one by H+H: Flaherty's December 2020 statement that the criteria "should not change." Second, ARE has failed to allege an actionable misrepresentation or reasonable reliance, because Flaherty's representation that the criteria "should not change" is a nonactionable statement of future intent, is indefinite and ambiguous, and is inconsistent with the terms of the Ground Lease. Third, the Complaint cannot establish any of the *Bridgestone* exceptions, which ARE must plead to avoid the bar applicable to a contracting party's claim to have been induced to enter into a contract by a misrepresentation.

A. *Flaherty's Statement that the Floodwall Criteria "Should Not Change" Is the Only Purported Misrepresentation, Omission, or Act of Concealment that ARE Alleges with the Particularity Necessary to Satisfy Rule 9(b).*

Rule 9(b) requires that plaintiffs allege the "who, what, where, when and how" of the fraud. *Brainbuilders LLC v. EmblemHealth, Inc.*, 2022 U.S. Dist. LEXIS 140874, at *25 (S.D.N.Y. Aug. 8, 2022). The Second Circuit has "repeatedly explained that Rule 9(b)'s heightened pleading requirement 'serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits.'" *Inspired Capital, LLC v. Condé Nast*, 803 Fed. App'x 436, 440 (2d Cir. 2020) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

The length of ARE's Complaint disguises its lack of particularity. ARE does not adequately allege any misrepresentation, omission, concealment, or duty to disclose by NYCEDC and adequately pleads only one alleged misrepresentation by H+H: Flaherty's December 2020 statement that the floodwall criteria "should not change." As the Complaint does not allege with particularity that NYCEDC made any misrepresentation, omission, or concealment, the Court should dismiss the fraudulent inducement claims against NYCEDC on this basis alone.

i. The Complaint Does Not Allege Omission or Concealment with Particularity.

Where a fraud claim is premised on omissions or concealment, the plaintiff must allege, among other things, "what the omissions were, the person responsible for failing to disclose, [and] the context of the omission." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997). The plaintiff must also allege the manner in which it was misled by the purported omission or concealment. *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 665 (S.D.N.Y. 2007).

The Complaint does not plead any omission or concealment with particularity. ARE never identifies the person responsible for any alleged non-disclosure. *See* Compl. ¶¶ 3, 9-10, 60, 64, 73,

82-83, 102-03, 105, 115-16, 121, 129-32, 136-40, 144-46, 148-51, 155-59, 163-70, 178.[4] These paragraphs also do not plead the context of any alleged omission or concealment, because they do not "specifically identify statements made to" ARE that "fail[] to mention" the pertinent information or identify the relevant dates or time periods with sufficient specificity. *Malmsteen*, 477 F. Supp. 2d at 665 (citing *Weaver*, 172 F.R.D. at 101; *Gould v. Berk & Michaels, P.C.*, 1991 U.S. Dist. LEXIS 10454 (S.D.N.Y. July 29, 1991)); *see also Kraus USA, Inc. v. Magarik*, 2020 U.S. Dist. LEXIS 83481, at *43-44 (S.D.N.Y. May 12, 2020) (dismissing for failure to plead time period with particularity); *Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.*, 2018 U.S. Dist. LEXIS 68792, at *33-34 (E.D.N.Y Apr. 23, 2018) (same); *Adler v. Berg Harmon Assocs.*, 816 F. Supp. 919, 924 (S.D.N.Y.1993) (dismissing complaint that "failed to allege the substance and circumstances of the omission with sufficient particularity to give defendants fair notice of the claim").

ii. <u>The Complaint Does Not Plead an Alleged Duty to Disclose with Particularity.</u>

Where a fraud claim is premised on omissions or concealment, the plaintiff must allege the defendants' duty to disclose the relevant information. *Malmsteen*, 477 F. Supp. 2d at 665 (citing *Swersky v. Dreyer & Traub*, 219 A.D.2d 321 (1st Dep't 1996)). ARE makes only conclusory allegations that Defendants failed to disclose and concealed "[floodwall]-related facts that were uniquely within their possession." *See id.* ¶¶ 132, 151. Those allegations are insufficient to plausibly allege a duty to disclose. *See Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997) (holding that, even when the information indicating fraud is solely within

---

[4] ARE frequently alleges omissions or concealment in conclusory fashion, failing to identify the specific instances to which it refers. *See, e.g.*, *id.* ¶¶ 9, 10, 82, 129-32, 178. ARE also often fails to plead the manner in which ARE was misled, with some alleged omissions or concealment related to ARE's decisions to enter into prior amendments or to exercising the Option but unrelated to ARE's fraud claims regarding the Tenth and Eleventh Amendments. *See id.* ¶¶ 9, 60, 64.

the defendant's possession, the plaintiff must still "provide a statement of facts upon which the belief is founded").[5] Nothing in the Complaint provides Defendants notice of what ARE alleges Defendants were supposed to disclose and when.

    iii.  <u>The Complaint Pleads Only One Alleged Misrepresentation with Particularity: Flaherty's Statement that the Criteria "Should Not Change."</u>

Where fraud claims are premised on misrepresentations, plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012); *see also Brock Cap. Grp. LLC v. Siddiqui*, 2022 U.S. Dist. LEXIS 101738, at *6-7 (S.D.N.Y. June 7, 2022) (Buchwald, J.) (similar). The Complaint alleges that "Defendants made repeated material misrepresentations," Compl. ¶ 129, but it identifies the "where" and "when" of only two alleged misrepresentations: those allegedly contained in the December 2020 Flaherty Letter and those allegedly made during in-person negotiations on October 12, 2022. Compl. ¶¶ 93, 107.[6] But the latter allegation does not "identify the speaker" or "specify the statement[]." *Anschutz Corp.*, 690 F.3d at 108; *see also* Compl. ¶ 107 (alleging that "Defendants" made the statement, which ARE purports to paraphrase); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Thus, the only purported misrepresentation ARE alleges with particularity is the one allegedly included in the Flaherty Letter. For the reasons discussed below, that allegation cannot sustain ARE's causes of action for fraudulent inducement.

---

[5] *See also Sehera Food Servs. Inc. v. Empire State Bldg. Co. L.L.C.*, 74 A.D.3d 542, 543 (1st Dep't 2010) ("[T]here is no duty to disclose in a non-fiduciary, arm's length transaction between a landlord and tenant." (citing *Dembeck v. 220 Cent. Park S., LLC*, 33 A.D.3d 491, 492 (2006))).

[6] To the extent that the Complaint identifies the date and/or speaker of any other alleged misrepresentations, ARE does not "explain why the statements were fraudulent." *Anschutz Corp.*, 690 F.3d at 108.

B.   *The Complaint Fails to State a Claim for Fraud, Because ARE Fails to Plausibly Plead an Actionable Misrepresentation or Reasonable Reliance.*

The elements of fraud under New York law are: (1) a material misrepresentation, (2) intent to defraud, (3) reasonable reliance, and (4) damages. *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996). A plaintiff's failure to plausibly allege any of these elements warrants dismissal. *See, e.g.*, *Pacnet Network Ltd. v. KDDI Corp.*, 78 A.D.3d 478, 479 (1st Dep't 2010) (affirming dismissal of nonactionable misrepresentation); *Brock Cap. Grp. LLC v. Siddiqui*, 2022 U.S. Dist. LEXIS 101738, at *8-9 (S.D.N.Y. June 7, 2020) (Buchwald, D.J.) (reasonable reliance properly considered at motion to dismiss stage because "the standard is an objective one"). ARE cannot plead an actionable misrepresentation or reasonable reliance, because Flaherty's representations are statements of future expectation, are ambiguous and indefinite, and are inconsistent with the terms of the Ground Lease.

i.   <u>H+H's Representation that the Criteria "Should Not Change" Is a Nonactionable Statement of Future Expectations.</u>

Under New York law, misrepresentations of "existing fact" can sustain a fraud claim, but misrepresentations of "future expectations" cannot. *Deutsche Bank Nat'l Trust Co. v. Sinclair*, 68 A.D.3d 914, 916 (2d Dep't 2009); *see also, e.g.*, *Sejin Precision Indus.*, 235 F. Supp. 3d at 554-55 ("[A] prediction of future events . . . cannot sustain a fraud claim."); *Dragon Inv. Co. II LLC v. Shanahan*, 49 A.D.3d 403, 403 (1st Dep't 2008) ("[A] prediction of something which is . . . expected to occur in the future will not sustain an action for fraud."). Any representation of the floodwall criteria's finality relates to expectations about future events: whether the criteria would change before the parties reached a final agreement memorialized in a written contract.

The Flaherty Letter's language highlights this point. She represented that the criteria "should not change," and the dictionary defines "should" as an expression of "what is probable or expected." *Should*, Merriam-Webster, https://www.merriam-webster.com/dictionary/should (last

accessed Nov. 18, 2024 1:44 PM). "[S]tatements of prediction or expectation" cannot sustain a fraud claim. *Pacnet Network Ltd.*, 78 A.D.3d at 479.

"[A]n actionable misrepresentation during a contractual negotiation must be factual in nature and not promissory or relating to future events that might never come to fruition." *President Container Grp. 11, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 166 (S.D.N.Y. 2020); *see also Int'l Fin. Corp. v. Carrera Holds. Inc.*, 82 A.D.3d 641, 641-42 (1st Dep't 2011) (holding "expressions of hope and opinion" nonactionable). Even if Flaherty had guaranteed that the criteria "will not change," she would have made a quintessential promise, which "gives rise only to a breach of contract cause of action." *Merrill Lynch*, 500 F.3d at 184. However, Flaherty's statement that the criteria "should" not change is too indefinite and ambiguous to constitute a promise, providing the Court still more grounds to dismiss. *See infra* § I.B.ii.

> ii. Flaherty's Representation that the Floodwall Criteria "Should Not Change" Is Too Indefinite and Ambiguous to Constitute an Actionable Misrepresentation or to Support Reasonable Reliance.

Under New York law, Flaherty's representations are too "indefinite" and "ambiguous" to establish the misrepresentation or reliance elements of ARE's fraud claims. *See, e.g.*, *D.S. Magic Tech, LLC v. 2720 LLC*, 2015 N.Y. Misc. LEXIS 4174, at *2 (1st Dep't Nov. 19, 2019) (alleged misrepresentations too "indefinite" to be actionable (citing *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 575 (1986))); *Rizkallah v. Forward Air, Inc.*, 2009 U.S. Dist. LEXIS 86999, at *17 (S.D.N.Y. Sept. 21, 2009) (same); *Hollander v. Cayton*, 145 A.D.2d 605 (2d Dep't 1988) (holding statements that were "indefinite," "ambiguous," and incapable of being objectively characterized as true or false to be nonactionable opinion.);[7] *Fierro v. Gallucci*, 2010 U.S. Dist. LEXIS 27664, at *50-54

---

[7] *See also Amuze v. Better Bus. Bureau*, 2023 N.Y. Misc. LEXIS 958, at *12 (N.Y. Co. Sup. Ct. Mar. 3, 2023) ("[T]he statements referring to plaintiff as a fraud and guilty of unethical business statements do not have a precise meaning and are exceedingly broad under the circumstances."); *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 436

(E.D.N.Y. Mar. 24, 2010) (holding that "indefinite" statements cannot establish reasonable reliance (citing *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211 (N.Y. 1978))); *Van Kleeck v. Hammond*, 25 A.D.3d 941, 943 (3d Dep't 2006) (same).

Flaherty wrote, "The criteria are already settled and, based on existing information and current conditions, *it should not change*." Compl. ¶ 93. First, Flaherty conditions her expectation of whether the criteria would change "on existing information and current conditions"—but that statement is ambiguous, because Flaherty does not specify what information or conditions could affect her opinion. *Id.* Second, Flaherty's use of the word "should" leaves open the possibility that the criteria could change in the future. Such "vague or equivocal" language is not actionable as fraud. *Fishbaum v. Liz Claiborne, Inc.*, 1999 U.S. App. LEXIS 18155, at *8 (2d Cir. July 27, 1999); *see also People v. Minott*, 94 N.Y.2d 784, 786 (1999) (holding "[e]quivocal and subjective language" nonactionable). Third, the Complaint incorrectly interprets the Flaherty Letter to make representations about the October 2020 criteria specifically. *Compare* Compl. ¶¶ 13, 105 (alleging December 2020 confirmation of finality of October 2020 Report and reliance on that representation), *with* Ex. 5 at 1 (December 2020 Flaherty Letter explaining that the relevant criteria were not limited to those in the October 2020 Report). To the extent that there is ambiguity about the criteria to which Flaherty referred, that ambiguity weighs in favor of dismissal, because "indefinite" or "ambiguous" representations cannot establish misrepresentation or reliance.

iii.    The Cooperation Clause Precludes Reasonable Reliance on Alleged
        Extracontractual Representations of the Floodwall Criteria's Finality.

Under New York law, it is objectively unreasonable for a party to a contract to rely on extracontractual representations inconsistent with the subsequent contract language. *See, e.g.*,

---

(S.D.N.Y. 2006) (holding that a misrepresentation cannot sustain a fraud claim if it is "subjective" and "cannot be proven 'true' or 'false'").

*CapLOC, LLC v. McCord*, 2018 U.S. Dist. LEXIS 99321, at *29 (S.D.N.Y. June 12, 2018) (collecting cases); *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999) ("[A]ny reliance by . . . a sophisticated businessman, upon representations contrary to the plain language of the agreements he was signing would therefore be patently unreasonable."), *aff'd*, *HSBC Bank v. Hales*, 4 Fed. App'x 15 (2d Cir. 2001); *Humble Oil & Ref. Co. v. Jaybert Esso Serv. Station, Inc.*, 30 A.D.2d 952, 952 (1st Dep't 1968) (holding reliance unreasonable where "written instrument contains terms different from those allegedly orally represented").

ARE cannot establish reasonable reliance based on any allegation of the design criteria's finality, because those representations are inconsistent with the Cooperation Clause. *See* Ex. 3 § 4. Indeed, there is direct conflict, because the Tenth Amendment refers to "Landlord's <u>proposed</u> flood mitigation requirements," *id.* (emphasis added), not to any finalized requirements or criteria. *See* Compl. ¶¶ 105, 115, 117-18, 130, 142, 161, 165 (ARE using the terms "criteria" and "requirements" interchangeably). However, direct conflict is not necessary for a contract provision to preclude reasonable reliance on an inconsistent extracontractual representation. *See, e.g.*, *Michael Rapaport & Michael David Prods. v. Barstool Sports, Inc.*, 2021 U.S. Dist. LEXIS 119045, at *12-13 (S.D.N.Y. June 25, 2021) ("[A] plaintiff may not claim that it acted on the basis of mistaken knowledge when it concerns an issue that 'was expressly considered . . . under the thoroughly negotiated contractual agreements' . . . ." (first ellipsis in original) (quoting *Mariano v. CVI Invs. Inc.*, 809 F. App'x 23, 27 (2d Cir. 2020) (summary order))); *Clifton v. Vista Computer Services, LLC*, 2002 U.S. Dist. LEXIS 12977, at *8-12 (S.D.N.Y. July 16, 2002) (holding that, where "the contract acknowledge[d] the possibility that there will be no financing, a promise about what will happen to that financing" was neither extraneous to the contract nor a promise the plaintiff could reasonably rely upon). Far from guaranteeing the criteria's finality, the Cooperation

Clause recognizes that nothing is set in stone and that the parties might not succeed in reaching agreement about the floodwall. *See* Ex. 3 § 4.

The context of the parties' decade-long negotiation of the Option further demonstrates the unreasonableness of ARE's alleged reliance on the finality of the October 2020 criteria. "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Brock Cap. Grp.*, 2022 U.S. Dist. LEXIS 101738, at *8-9. The complexity of the transaction cannot be overstated; it involves, among other things, the development of lab space for a specialized market, incorporation of the North Tower into the existing ARE campus, and, potentially, the integration of part of a larger, potentially FEMA-funded floodwall into the North Tower's foundation. Compl. ¶¶ 10-11, 86. The sophistication of ARE and its counsel are also difficult to overstate, with ARE alleging itself to be "the foremost developer of specialized commercial life science properties in the world." *Id.* ¶ 4. And the Ground Lease expressly provides that the parties agreed to be bound by and to rely on only written, signed amendments. *See* Ex. 1 §§ 18.2, 31.1, 41.11. The parties' course of dealing confirms that, when they reached agreement on the terms by which ARE would develop the North Tower, the parties memorialized those agreements in signed amendments to the Ground Lease. *See, e.g.*, Ex. 4 § 1 & at 8-159 (Eleventh Amendment memorializing agreement to, among other things, the minimum size of the North Tower). If a sophisticated party like ARE wished to rely on the finality of the October 2020 criteria, it would have insisted on including such terms in a written, signed amendment.

*C. The Complaint Fails to State a Claim, Because ARE Fails to Plausibly Plead a Bridgestone Exception to the Bar on Fraudulent Inducement Claims.*

"In addition to proving the elements of fraudulent inducement, a party bears an additional burden when arguing that it was induced to enter into a contract by way of a misrepresentation." *Osan Ltd. v. Accenture Llp*, 454 F. Supp. 2d 46, 52 (E.D.N.Y. 2006); *see also Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017) (similar).[8] "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone*, 98 F.3d at 20.

ARE does not meet any of these so-called *Bridgestone* exceptions. The Complaint identifies no special legal duty, "such as those arising from a fiduciary relationship." *Sequoia Healthcare Servs., LLC v. Essex Capital Corp.*, 2018 U.S. Dist. LEXIS 116265, at *12 (S.D.N.Y. July 11, 2018) (Buchwald, D.J.); *see also* Ex. 1 § 41.4 (limiting the parties to "a landlord and tenant relationship"). ARE also does not seek special damages unrecoverable as contract damages. Although ARE asserts in conclusory fashion that it suffered "[i]ndirect and consequential damages," Compl. at 53, ARE "never pleads with particularity what specific special damages it suffered." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *12-13; *see also* F. R. Civ. P. 9(g) (requiring that special damages "be specifically stated").

Nor are Flaherty's representations collateral or extraneous to the Ground Lease. When determining whether an alleged misrepresentation satisfies the second *Bridgestone* exception, "the

---

[8] *See also Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual and cannot be repackaged as tort claims." (internal quotations omitted)); *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) (similar).

first and threshold question is whether the alleged misrepresentation is a statement of present fact, as opposed to one of future intent." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *13-14 (quoting *Koch Indus., Inc. v. Hoechst AG*, 727 F. Supp. 2d 199, 215 (S.D.N.Y. 2010) (Buchwald, D.J.)). As stated above, Flaherty's representations are of future intent. *Supra* § 1.B.i; *see also Remuda Jet Five LLC v. Empressa Brasileira De Aeronautica, S.A.*, 2012 U.S. Dist. LEXIS 48736, at *47 (S.D.N.Y. 2012) (Buchwald, D.J.) (dismissing representation that airplane "would have a range of at least 17100 nautical miles" on this basis).

Even when the alleged misrepresentations concern present facts, a plaintiff cannot establish a misrepresentation collateral or extraneous to the contract if "the terms of the parties' agreement preclude a fraud suit on the basis of the alleged misstatement." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *14 (quoting *Koch Indus.*, 727 F. Supp. 2d at 214); *see also Kriegel v. Donelli*, 2014 U.S. Dist. LEXIS 90086, at *43 (S.D.N.Y. 2014) (dismissing on this basis). "A merger clause or an express provision barring suit, or a contractual provision bearing directly on the subject of the misstatement, will be sufficient to preclude a subsequent fraud claim." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *14 (internal citations omitted).

The Ground Lease precludes ARE's fraud claims for both reasons: it includes a merger clause and a contractual provision bearing directly on the subject of the alleged misstatement. In addition to the merger clause, Ex. 1 § 31.1, the Ground Lease provides that the parties may not alter the terms of the Ground Lease "except by a written instrument of change . . . executed by the other party," *id.* § 41.11. Furthermore, ARE's "position is clearly at odds with the terms of the" Ground Lease, under which ARE "disclaimed all extraneous representations." *Koch Indus.*, 727 F. Supp. 2d at 214; *see also* Ex. 1 § 18.2 (providing that the Landlord made no representations regarding "the transaction contemplated by this Lease, [and] Tenant has relied on no such

representations").[9] These provisions demonstrate the parties' intent to be bound only by written, signed amendments to the Original Ground Lease.

Even if the Ground Lease did not include these provisions, it would preclude ARE's fraud claims, because the Cooperation Clause is a "provision bearing directly on the subject of the [alleged] misstatement." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *13. As stated above, any belief that the criteria were set in stone conflicts with the Cooperation Clause's reference to "Landlord's proposed flood mitigation requirements." Ex. 3 § 4(b) (emphasis added); *see also, e.g.*, *supra* § I.B.iii. *Lam v. Am. Express Co.*, 265 F. Supp. 2d 225, 231 (S.D.N.Y. 2003) (fraud claims not collateral or extraneous where alleged misrepresentations contradicted contract's terms); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 326 (S.D.N.Y. 2002) (same). However, direct conflict is not necessary for the Cooperation Clause to preclude a fraud suit under *Bridgestone*. *See, e.g.*, *Four Finger Art Factory, Inc. v. DiNicola*, 2000 U.S. Dist. LEXIS 1221, at *15-16 (S.D.N.Y. Feb. 9, 2000) (dismissing fraud claims where the alleged misrepresentations "concern matters which are specifically covered by the contract"); *Revonate Mfg., LLC v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 12619, at *10 (S.D.N.Y. Jan. 18, 2013) (dismissing fraud claims where alleged misrepresentations were "intrinsic" to contractual obligations). Under *Bridgestone*, it is enough that the factual basis of ARE's fraud claims—Flaherty's statement about the criteria—falls within the "purview" of the Cooperation Clause. *In re Enron Corp.*, 2005 U.S. Dist. LEXIS 2134, at *37 (S.D.N.Y. Feb. 14, 2005) (Buchwald, D.J.).

As a "sophisticated entit[y], represented by counsel, who could easily have negotiated different terms," *Koch Indus.*, 727 F. Supp. 2d at 216, ARE can enforce only the terms of the Ground Lease. If the Court "were to rule otherwise, the strong New York policy, giving autonomy

---

[9] The Tenth and Eleventh Amendments, executed after the Flaherty Letter, became part of the larger Ground Lease and affirmatively ratified and confirmed the above-cited provisions. *See* Ex. 3 §§ 11(a)-(b); Ex. 4 §§ 3(a)-(b).

to contracting parties to allocate risks, and rights, obligations, warranties and disclaimers, as they see fit, would be compromised." *DynCorp*, 215 F. Supp. 2d at 326. Rather than countenance ARE's efforts to rewrite the Ground Lease, the Court should dismiss ARE's fraud claims.

## II.    ARE Has Not Stated a Claim for Breach of the Implied Covenant Under Rule 12(b)(6).

The Court should dismiss ARE's implied covenant claim for three independent reasons: (A) the Complaint does not allege facts demonstrating that H+H deprived ARE of the benefit of its bargain, (B) ARE premises this claim on H+H's negotiating position, and (C) there is no lawful basis to imply a covenant that the floodwall criteria could not change.

### A.    *The Complaint Fails to State an Implied-Covenant Claim, Because ARE Fails to Plausibly Plead that H+H Deprived ARE of the Benefit of Its Bargain.*

Under New York law, implied covenant claims may proceed only where one party's conduct deprived the other party of the benefit of its bargain. *E.g.*, *Butvin v. DoubleClick, Inc.*, 2001 U.S. Dist. LEXIS 2318, at *28-29 (S.D.N.Y. Mar. 5, 2001). Stated differently, such claims must involve "efforts by one party to a contract to subvert the contract itself," and courts applying New York law cannot "impose an obligation that was not agreed to by the parties." *Id.* at *28-33.

ARE fails to plausibly plead that H+H deprived it of the benefit of its bargain, which was an Option to develop the North Tower. ARE claims that, by allegedly changing the floodwall criteria in November 2023, H+H breached an alleged implied covenant that H+H "refrain from taking any action to obstruct or interfere with ARE's . . . closing on the Option and development of the North Tower." Compl. ¶¶ 174-77. But the closing requirements do not mention the floodwall, let alone the floodwall criteria. *See* Ex. 2 Arts. 3, 5-6. The only portion of the Ground Lease that discusses the floodwall is the Cooperation Clause, which does not create any closing requirements related to the floodwall or require that the floodwall be included in the North Tower. *See* Ex. 3 § 4. To the contrary, the Cooperation Clause provides that the parties shall cooperate "to

attempt" to reach mutual agreement regarding the floodwall. *Id.* The Complaint includes no factual allegations demonstrating how the alleged changes to the floodwall criteria in November 2023 prevented ARE from closing on the Option and developing the North Tower.

B. *The Complaint Fails to State an Implied-Covenant Claim, Because that Claim Relies on H+H's Conduct During Negotiations of the Proposed Thirteenth Amendment.*

ARE premises its implied-covenant claim on H+H's negotiating position regarding the proposed Thirteenth Amendment. Compl. ¶¶ 113, 117-18, 177. But the implied covenant "is limited to performance under a contract and does not encompass future dealings or negotiations between the parties." *Bank of N.Y. v. Sasson,* 786 F. Supp. 349, 354 (S.D.N.Y. 1992). "Nothing in the duty of good faith requires that parties to a negotiation propose only such terms as the other party is happy with" or "undermine[s] a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Warner Theatre Assocs. Ltd. Pshp. v. Metropolitan Life Ins. Co.*, 1997 U.S. Dist. LEXIS 17217, at *19 (S.D.N.Y. 1997) (internal quotations omitted) (Sotomayor, D.J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998). As a matter of law, ARE fails to state a claim that H+H breached the implied covenant by allegedly altering the criteria during negotiations of the proposed Thirteenth Amendment.

C. *The Complaint Fails to State an Implied-Covenant Claim, Because There Is No Contractual Basis to Imply a Covenant that the Floodwall Criteria Could Not Change After October 2020.*

To the extent that ARE seeks to imply a covenant that the floodwall criteria could not change after October 2020, ARE has not carried its "'heavy burden' to 'prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole." *Singh v. City of N.Y.*, 40 N.Y.3d 138, 146 (2023) (quoting *Rowe v Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978)). "Clarity and predictability are particularly important in the interpretation

of contracts . . . and 'this is perhaps true in real property more than any other area of the law.'" *Moran v. Erk*, 11 N.Y.3d 452, 457 (2008) (quoting *Holy Props. v. Cole Prods.*, 87 N.Y.2d 130, 134 (1995)).

ARE cannot imply a covenant that the floodwall criteria could not change after October 2020 based on alleged extracontractual promises because, when a merger clause is present, the obligation sought to be enforced must be "so interwoven in the whole writing of a contract as to be necessary for the effectuation of the purposes of the contract." *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 354-55 (1st Dep't 2004) (internal quotations and brackets omitted); *accord M/A-Com Security Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990); *see also* Ex. 1 §§ 18.2, 31.1, 41.11 (the Ground Lease's no-other-representations, merger, and no-oral-modification clauses); *Wayland Inv. Fund, LLC v. Millenium Sea Carriers, LLC*, 111 F. Supp. 2d 450, 454-55 (S.D.N.Y. 2000) (holding that, even in the absence of a merger or integration clause, parole evidence may not be considered to vary the language of a written contract). In other words, the basis for implying a covenant must come from the Ground Lease itself.

ARE provides no contractual basis to imply a covenant that the floodwall criteria could not change after October 2020. Nothing in the Ground Lease could support such a finding.

To the contrary, the Ground Lease shows that the floodwall was subject to further negotiation. First, when the parties reached agreement on the terms by which ARE would develop the North Tower, they memorialized those agreements in amendments to the Ground Lease; for example, that is the point of the Eleventh Amendment. *See* Ex. 4 § 1 & at 8-159 (memorializing agreement to, among other things, the minimum size of the North Tower); *see also* Ex. 1 §§ 18.2, 31.1, 41.11 (the Ground Lease's no-other-representations, merger, and no-oral-modification clauses). Second, the Cooperation Clause—the sole Ground Lease provision to address the

floodwall—recognizes that the floodwall criteria were "proposed" and subject to design review and negotiation. Ex. 3 § 4(b). That provision's "attempt to reach" language forecloses ARE's attempt to imply an obligation to adhere to unchanging criteria. *Id.*

Thus, any alleged covenant that the floodwall criteria could not change after October 2020 would be inconsistent with the terms of the Ground Lease. The implied covenant cannot be used to "imply obligations inconsistent with other terms of the contractual relationship.'" *Singh*, 40 N.Y.3d at 146; *see also JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (holding that there can be no breach of the implied covenant when "the defendant acts in accordance with the express terms of the contract").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint.

Dated:      New York, New York
            December 13, 2024


                              Respectfully Submitted,

                              **MURIEL GOODE-TRUFANT**
                              Corporation Counsel of
                              the City of New York
                              *Attorney for Defendants*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2489


                    By:     /s/  David Angelatos
                            David Angelatos
                            *Assistant Corporation Counsel*