UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

ARE-EAST RIVER SCIENCE PARK LLC,

                                     Plaintiff,         Case No. 24-cv-05956 (NRB)

             -against-                **Oral Argument Requested**

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and NEW YORK CITY ECONOMIC
DEVELOPMENT CORPORATION,

                                Defendants.

------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR PARTIAL DISMISSAL OF THE FIRST AMENDED COMPLAINT

MURIEL GOODE-TRUFANT
Corporation Counsel of the
  City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007

Of Counsel:
Robert Funkhouser
Leslie Spitalnick
David Angelatos
Assistant Corporation Counsel
(212) 356-2489
dangelat@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 3

    I.   The Option ..............................................................................................................3

    II.  The Floodwall ........................................................................................................3

    III. The Floodwall Criteria..........................................................................................4

    IV. The Basis of ARE's Fraud Claims.........................................................................5

          A.   The Flaherty Letter .....................................................................................6

          B.   The Ker Email.............................................................................................7

          C.   The Bindler Draft........................................................................................7

          D.   The Arcadis Analysis..................................................................................7

          E.   The Oral Representation .............................................................................8

LEGAL STANDARDS ....................................................................................................... 8

DISCUSSION ..................................................................................................................... 9

    I.   Flaherty's Statement that the Floodwall Criteria "Should Not Change" Is the Only Purported Misrepresentation, Omission, or Act of Concealment that ARE Alleges with the Particularity Necessary to Satisfy Rule 9(b). ................................................................................10

    II.  The FAC Fails to State a Claim for Fraud, Because ARE Cannot Establish Reasonable Reliance, an Actionable Misrepresentation, or the Facts Required by the Second Circuit's *Bridgestone* Decision....................................................................12

          A.   It Was Objectively Unreasonable for ARE to Rely on the Finality and Exclusivity of the October 2020 Criteria. .......................................................................12

          B.   The FAC Fails to Adequately Allege an Actionable Misrepresentation. ..........................................................16

**Page**

    C.   The FAC Fails to State a Claim for Fraudulent Inducement, Because ARE Does Not Plead the Facts Required by the Second Circuit's *Bridgestone* Decision. .........................................................................19

III.  ARE Has Not Stated a Claim for Breach of the Implied Covenant Under Rule 12(b)(6). .......................................................22

    A.   The FAC Fails to State an Implied-Covenant Claim, Because ARE Fails to Plausibly Plead that H+H Deprived ARE of the Benefit of Its Bargain. ............................................................................................22

    B.   The FAC Fails to State an Implied-Covenant Claim, Because ARE Relies on Conduct During Negotiation of the Proposed Thirteenth Amendment. ...............................................................................23

    C.   The FAC Fails to State an Implied-Covenant Claim, Because There Is No Contractual Basis to Imply a Covenant that the Floodwall Criteria Could Not Change After October 2020. ............................................24

CONCLUSION ....................................................................................................... 26

LOCAL CIVIL RULE 7.1(c) CERTIFICATION ....................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abrahami v. UPC Constr. Co.*,
    224 A.D.2d 231 (1st Dep't 1996) .......................................................15

*Adler v. Berg Harmon Assocs.*,
    816 F. Supp. 919 (S.D.N.Y.1993) ..................................................11

*Amuze v. Better Bus. Bureau*,
    Index No. 651529/2022, 2023 N.Y. Misc. LEXIS 958
    (Sup. Ct. N.Y. Cnty. Mar. 3, 2023).................................................19

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
    690 F.3d 98 (2d Cir. 2012)..........................................................10, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................8, 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................10

*Bank of N.Y. v. Sasson*,
    786 F. Supp. 349 (S.D.N.Y. 1992) ...............................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................8, 9

*Bermudez v. Colgate-Palmolive Co.*,
    667 F. Supp. 3d 24 (S.D.N.Y. 2023)............................................18

*Brainbuilders LLC v. EmblemHealth, Inc.*,
    No. 21-cv-4627 (KPF), 2022 U.S. Dist. LEXIS 140874
    (S.D.N.Y. Aug. 8, 2022) ..............................................................10

*Bridgestone/Firestone v. Recovery Credit Servs.*,
    98 F.3d 13 (2d Cir. 1996)............................................2, 9, 12, 17, 19, 22

*Brock Cap. Grp. LLC v. Siddiqui*,
    No. 21-cv-2070 (NRB), 2022 U.S. Dist. LEXIS 101738
    (S.D.N.Y. June 7, 2020)...........................................................12, 16

*Butvin v. DoubleClick, Inc.*,
    No. 99-cv-4727 (JFK), 2001 U.S. Dist. LEXIS 2318
    (S.D.N.Y. Mar. 5, 2001) ............................................................22, 23

**Cases**                                                                    **Pages**

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*,
   117 F.3d 655 (2d Cir. 1997)..................................................................11

*CapLOC, LLC v. McCord*,
   No. 17-cv-5788 (AT), 2018 U.S. Dist. LEXIS 99321
   (S.D.N.Y. June 12, 2018)...............................................................13

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir. 2003)...............................................................19

*Chapman v. Mueller Water Prods.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020)..........................................18

*Chimart Assocs. v. Paul*,
   66 N.Y.2d 570 (1986) .....................................................................19

*Clifton v. Vista Computer Servs., LLC*,
   No. 01-cv-10206 (JSM), 2002 U.S. Dist. LEXIS 12977
   (S.D.N.Y. July 16, 2002) ...............................................................13

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
   252 F. Supp. 3d 274 (S.D.N.Y. 2017)..........................................19

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)...............................................................9

*D.S. Magic Tech, LLC v. 2720 LLC*,
   No. 15-341, 2015 N.Y. Misc. LEXIS 4174
   (1st Dep't Nov. 19, 2019) ..........................................................18-19

*Dembeck v. 220 Cent. Park S., LLC*,
   33 A.D.3d 491 (2006) .....................................................................11

*Deutsche Bank Nat'l Trust Co. v. Sinclair*,
   68 A.D.3d 914 (2d Dep't 2009) .....................................................17

*Dragon Inv. Co. II LLC v. Shanahan*,
   49 A.D.3d 403 (1st Dep't 2008) .....................................................17

*DynCorp v. GTE Corp.*,
   215 F. Supp. 2d 308 (S.D.N.Y. 2002)......................................21, 22

*In re Enron Corp.*,
   2005 U.S. Dist. LEXIS 2134
   (S.D.N.Y. Feb. 14, 2005)................................................................22

iv

**Cases**                                                                                          **Pages**

*Fierro v. Gallucci*,
    No. 06-cv-5189 (JFB), 2010 U.S. Dist. LEXIS 27664
    (E.D.N.Y. Mar. 24, 2010) ...............................................................................14

*Fishbaum v. Liz Claiborne, Inc.*,
    No. 98-9396, 1999 U.S. App. LEXIS 18155
    (2d Cir. July 27, 1999) ...................................................................................14

*Four Finger Art Factory, Inc. v. DiNicola*,
    No. 99-cv-1259 (JGK), 2000 U.S. Dist. LEXIS 1221
    (S.D.N.Y. Feb. 9, 2000) ...................................................................................22

*George Backer Mgmt. Corp. v. Acme Quilting Co.*,
    46 N.Y.2d 211 (1978) ......................................................................................14

*Green Star Energy Sols., LLC v. Edison Props., LLC*,
    No. 21-cv-2682 (LJL), 2022 U.S. Dist. LEXIS 196738
    (S.D.N.Y. 2022) ...............................................................................................18

*Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.*,
    No. 2:15-cv-05887 (ADS), 2018 U.S. Dist. LEXIS 68792
    (E.D.N.Y. Apr. 23, 2018) .................................................................................11

*Hernandez v. Warsinske*,
    Index No. 162212/2019, 2021 N.Y. Misc. LEXIS 274
    (Sup. Ct. N.Y. Cnty. Jan. 22, 2021) ..........................................................15, 16

*Hollander v. Cayton*,
    145 A.D.2d 605 (2d Dep't 1988) ...............................................................14, 19

*Holy Props. v. Cole Prods.*,
    87 N.Y.2d 130 (1995) ......................................................................................24

*HSH Nordbank AG v. UBS AG*,
    95 A.D.3d 185 (1st Dep't 2012) ......................................................................15

*Humble Oil & Ref. Co. v. Jaybert Esso Serv. Station, Inc.*,
    30 A.D.2d 952 (1st Dep't 1968) ......................................................................13

*Inspired Capital, LLC v. Condé Nast*,
    803 F. App'x 436 (2d Cir. 2020) .....................................................................10

*Int'l Fin. Corp. v. Carrera Holds. Inc.*,
    82 A.D.3d 641 (1st Dep't 2011) ......................................................................17

**Cases**                                                                            **Pages**

*Iwachiw v. Port Auth. of N.Y. & N.J.*,
    151 F. App'x 93 (2d Cir. 2005) ..........................................................11

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
    29 F.4th 118 (2d Cir. 2022) ...........................................................25

*Koch Indus., Inc. v. Hoechst AG*,
    727 F. Supp. 2d 199 (S.D.N.Y. 2010)...........................................20, 21, 22

*Kraus USA, Inc. v. Magarik*,
    No. 17-cv-6541 (ER), 2020 U.S. Dist. LEXIS 83481
    (S.D.N.Y. May 12, 2020)................................................................11

*Kriegel v. Donelli*,
    No. 11-cv-9160 (ER), 2014 U.S. Dist. LEXIS 90086
    (S.D.N.Y. 2014)..........................................................................20

*Lam v. Am. Express Co.*,
    265 F. Supp. 2d 225 (S.D.N.Y. 2003).............................................21

*M/A-Com Security Corp. v. Galesi*,
    904 F.2d 134 (2d Cir. 1990)........................................................24-25

*Malmsteen v. Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007)............................................11

*Mariano v. CVI Invs. Inc.*,
    809 F. App'x 23 (2d Cir. 2020) ....................................................13

*Michael Rapaport & Michael David Prods. v. Barstool Sports, Inc.*,
    No. 18-cv-8783 (NRB), 2021 U.S. Dist. LEXIS 119045
    (S.D.N.Y. June 25, 2021)..............................................................13

*Moran v. Erk*,
    11 N.Y.3d 452 (2008) ..................................................................24

*Osan Ltd. v. Accenture Llp*,
    454 F. Supp. 2d 46 (E.D.N.Y. 2006) .............................................19

*Pacnet Network Ltd. v. KDDI Corp.*,
    78 A.D.3d 478 (1st Dep't 2010) ...................................................17

*People v. Minott*,
    94 N.Y.2d 784 (1999) ..................................................................14

**Cases**                                                                 **Pages**

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
   449 F. App'x 57 (2d Cir. 2011) ...........................................................19

*President Container Grp. 11, LLC v. Systec Corp.*,
   467 F. Supp. 3d 158 (S.D.N.Y. 2020)...................................................17

*Remuda Jet Five LLC v. Empressa Brasileira De Aeronautica, S.A.*,
   No. 10-cv-8369 (NRB), 2012 U.S. Dist. LEXIS 48736
   (S.D.N.Y. 2012) ....................................................................................20

*Republic Nat'l Bank v. Hales*,
   75 F. Supp. 2d 300 (S.D.N.Y. 1999),
   *aff'd, HSBC Bank v. Hales*,
   4 F. App'x 15 (2d Cir. 2001) ................................................................14

*Revonate Mfg., LLC v. Acer Am. Corp.*,
   No. 12-cv-6017 (KBF), 2013 U.S. Dist. LEXIS 12619
   (S.D.N.Y. Jan. 18, 2013)......................................................................22

*Rizkallah v. Forward Air, Inc.*,
   No. 02-cv-2448 (PGG), 2009 U.S. Dist. LEXIS 86999
   (S.D.N.Y. Sept. 21, 2009) ....................................................................19

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..................................................................18

*Rowe v. Great Atl. & Pac. Tea Co.*,
   46 N.Y.2d 62 (1978) .............................................................................24

*Sehera Food Servs. Inc. v. Empire State Bldg. Co. L.L.C.*,
   74 A.D.3d 542 (1st Dep't 2010) ...........................................................11

*Sejin Precision Indus. Co. v. Citibank, N.A.*,
   235 F. Supp. 3d 554 (S.D.N.Y. 2016)...................................................17

*Sequoia Healthcare Servs., LLC v. Essex Capital Corp.*,
   No. 17-cv-6640 (NRB), 2018 U.S. Dist. LEXIS 116265
   (S.D.N.Y. July 11, 2018) ..........................................................19, 20, 21

*Singh v. City of N.Y.*,
   40 N.Y.3d 138 (2023) ......................................................................24, 25

*SNS Bank, N.V. v. Citibank, N.A.*,
   7 A.D.3d 352, 355 (1st Dep't 2004) .....................................................24

**Cases**                                                                                                    **Pages**

*Telesco v. Neuman*,
    No. 14-cv-3480 (VB), 2015 U.S. Dist. LEXIS 66008
    (S.D.N.Y. Mar. 11, 2015) ........................................................................................19

*Van Kleeck v. Hammond*,
    25 A.D.3d 941 (3d Dep't 2006) .............................................................................14

*VisionChina Media Inc. v. Shareholder Representative Servs., LLC*,
    109 A.D.3d 49 (1st Dep't 2013) .............................................................................12

*Warner Theatre Assocs. Ltd. Pshp. v. Metropolitan Life Ins. Co.*,
    No. 97-cv-4914 (SS), 1997 U.S. Dist. LEXIS 17217
    (S.D.N.Y. 1997),
    *aff'd*, 149 F.3d 134 (2d Cir. 1998) .........................................................................24

*Wayland Inv. Fund, LLC v. Millenium Sea Carriers, LLC*,
    111 F. Supp. 2d 450 (S.D.N.Y. 2000).....................................................................25

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) ....................................................................... 10-11

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)......................................................................18

**Statutes**

Fed. R. Civ. P. 8(a)(2) ................................................................................................11

Fed. R. Civ. P. 9(b) .............................................................................1, 2, 8, 9, 10, 11, 12

Fed. R. Civ. P. 9(g) ....................................................................................................20

Fed. R. Civ. P. 12(b)(6)...................................................................1, 2, 8, 9, 10, 12, 22

Defendants New York City Health and Hospitals Corporation ("H+H") and New York City Economic Development Corporation ("NYCEDC" and, with "H+H," "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), the First, Second, and Third Causes of Action in the First Amended Complaint (the "FAC") of plaintiff ARE-East River Science Park, LLC ("ARE").[1]

## PRELIMINARY STATEMENT

The lease's Cooperation Clause governs the subject matter of this case, foreclosing both fraud and implied-covenant claims. The Cooperation Clause provides that the parties shall "cooperate in good faith to attempt to reach mutually agreeable written parameters related to Landlord's proposed flood mitigation requirements." This provision limits ARE to an argument it has not made: that H+H breached the lease by failing to cooperate with ARE in good faith.

Instead, ARE pleads this contract case as fraud. The parties' 2006 Ground Lease granted ARE an option (the "Option") to develop a third building on H+H's Bellevue Hospital Campus. During their allegedly decade-long negotiation of the Option, the parties' discussions included potentially designing the building to be part of a broader community floodwall. ARE now claims that it was fraudulently induced to enter into the Ground Lease's Tenth and Eleventh Amendments by Defendants' alleged misrepresentation that the floodwall "criteria" were final. ARE does not allege any facts distinguishing the allegedly final floodwall "criteria" from the "proposed flood mitigation requirements" referenced in the Tenth Amendment's Cooperation Clause.

Nor can ARE establish that the Cooperation Clause—the sole contract language regarding the floodwall—guaranteed the floodwall criteria's finality, obligated ARE to include a floodwall

---

[1] ARE amended its complaint to add a Fourth Cause of Action seeking a declaratory judgment. FAC ¶¶ 189-96. Defendants do not seek dismissal of that claim, which turns in part on a narrow fact question not appropriate for a motion to dismiss: why ARE failed to close on the Option by its contractual deadline.

in the ultimate Option development, or otherwise affected ARE's ability to close on the Option. The Cooperation Clause required only good faith cooperation. Yet, ARE claims that, by allegedly changing the floodwall criteria,[2] Defendants prevented ARE from closing on the Option before its November 3, 2024 deadline and thus breached the implied covenant of good faith and fair dealing.

The Court should dismiss ARE's fraud and implied-covenant claims. After amending its complaint in response to Defendants' initial motion to dismiss, ARE continues to take a shotgun approach to pleading fraud. But ARE identifies only one communication with the particularity necessary to satisfy Rule 9(b): Defendants' 2020 statement that the criteria "should not change."

ARE cannot state a plausible claim for fraud, as required by Rule 12(b)(6), based on that December 2020 statement. First, ARE's alleged reliance on the finality and exclusivity of certain floodwall criteria is objectively unreasonable given the contract language on the subject, the ambiguity of Defendants' statement, ARE's misunderstanding of that statement, and the context of the transaction between sophisticated parties. Second, ARE has not sufficiently alleged a misrepresentation, because ARE relies on a statement of future expectation that was not false and is too ambiguous to be actionable. Third, ARE has not adequately alleged a special relationship, special damages, or a misrepresentation collateral or extraneous to the Ground Lease, as required by the Second Circuit's *Bridgestone* decision.

ARE has also failed to state its claim against H+H for breach of the implied covenant of good faith and fair dealing. H+H did not deprive ARE of the benefit of its bargain; the implied covenant does not limit H+H's ability to negotiate in its self-interest; and there is no lawful basis to imply a covenant that the floodwall criteria could not change. Accordingly, the Court should dismiss ARE's First, Second, and Third Causes of Action under Rules 12(b)(6) and 9(b).

---

[2] ARE also has not demonstrated how Defendants materially changed the floodwall criteria. ARE's allegations on this subject rely on a mischaracterization of the applicable criteria. *See infra* at 5.

# BACKGROUND

## I.    The Option

In 2006, ARE signed the Original Ground Lease, with H+H as Landlord and NYCEDC as Lease Administrator. FAC ¶¶ 32-35. That lease provides for ARE's development of two buildings for rental as commercial life sciences space on H+H's Bellevue Hospital campus, as well as for ARE's Option to potentially develop a neighboring "North Tower." *Id.* ¶¶ 33-34. The Original Ground Lease also includes a "No Other Representations" clause, a merger clause, and a provision limiting contract modifications to signed documents. Berman Decl. Ex. 1 §§ 18.2, 31.1, 41.11.

The parties repeatedly amended the Ground Lease as part of their negotiation of the Option. The 2018 Seventh Amendment altered the terms and conditions by which ARE could close on the Option. FAC ¶¶ 58-59. The 2021 Tenth Amendment extended the deadline by which ARE could close on the Option and allowed potential further extensions to a final deadline of November 3, 2024. *Id.* ¶¶ 104, 154; *see also* Berman Decl. Ex. 3 §§ 2, 6(c)(ii), 6(f)(i)-(ii), 6(g)(i), 7(a)-(c). The 2022 Eleventh Amendment memorialized the parties' agreement to most of the terms of a draft amended and restated lease, which would apply if and when the parties closed. FAC ¶ 112; Berman Decl. Ex. 4 § 1 & at 8-159. These amendments were incorporated into the Ground Lease and affirmatively ratified the Ground Lease provisions limiting the parties' rights and obligations to those included therein. *See* Berman Decl. Ex. 3 §§ 11(a)-(b); Berman Decl. Ex. 4 §§ 3(a)-(b). The parties could not agree on a Thirteenth Amendment, and ARE did not close on the Option before its November 3, 2024 deadline. FAC ¶ 124, 128.

## II.    The Floodwall

As part of their negotiation of the Option, the parties discussed potentially including part of a broader community floodwall in the North Tower's design. The sole Ground Lease language related to the floodwall is in Section 4 of the Tenth Amendment (the "Cooperation Clause"). It

provides, among other things, that the parties "shall cooperate in good faith to attempt to reach mutually agreeable written parameters related to Landlord's proposed flood mitigation requirements . . . ." Berman Decl. Ex. 3 § 4. The draft amended and restated ground lease attached to the Eleventh Amendment, which would bind the parties only if and when ARE closed on the Option, includes a version of the Cooperation Clause that is substantially the same as the one included in the binding Tenth Amendment. Berman Decl. Ex. 4 at 119-20. Nothing in the Cooperation Clause requires that the floodwall be included in the North Tower, and no other portion of the Ground Lease addresses the floodwall. Nevertheless, ARE alleges that it was unable to close on the Option due to "continuing last-minute changes" to the "criteria" for development of the floodwall. FAC ¶ 128.[3]

## III.    The Floodwall Criteria

The FAC relies on two floodwall design criteria reports: the April 2020 Criteria and the October 2020 Criteria. *See id.* ¶¶ 88-91. The April 2020 Criteria is a 20-page report that includes a variety of "requirements" for construction of the floodwall. Berman Decl. Ex. 5 at 4-23. The October 2020 Criteria is a shorter report that elaborates on the "Design Load Requirements" set out in the April 2020 Criteria. FAC Ex. 3 at 3-11. The October 2020 Criteria does not address the other requirements included in the April 2020 Criteria. The FAC also relies on a December 2020 letter from H+H's Senior Executive Vice President Christine Flaherty (the "Flaherty Letter"), which addresses both the April 2020 Criteria and the October 2020 Criteria. FAC ¶¶ 94-96.

---

[3] ARE also alleges that it "miss[ed] the life science bull market," which has "now substantially softened." FAC ¶ 130. ARE further alleges "a material overbuilding of life science space in NYC" and "significantly constrained commercial life science demand." *Id.* ¶¶ 6, 130; *see also November 6th, 2024: City Planning Commission Public Meeting*, YouTube, https://www.youtube.com/live/9GPlXII87pY (last accessed Mar. 14, 2025 4:11 PM), at 2:09:20-2:20:00 (ARE's testimony in opposition to NYCEDC's efforts to develop nearby life sciences space). Defendants disagree with these characterizations of the life sciences market in New York City. However, ARE's statements indicate that it no longer wishes to proceed with the Option on the terms negotiated.

ARE's allegations that the floodwall criteria changed materially in 2023 and 2024 are based on its mistaken belief that the October 2020 Criteria superseded the April 2020 Criteria. *See id.* ¶¶ 119-28. ARE does not allege material changes to the April 2020 Criteria. *See id.* For example, ARE alleges that, in November 2023 and March 2024, Defendants added an "entirely new requirement": a seepage wall. *Id.* ¶¶ 16, 127. The April 2020 Criteria included a seepage-wall requirement. Berman Decl. Ex. 5 at 8. In essence, ARE alleges that it believed only the October 2020 Criteria, which did not reference the seepage-wall requirement, were applicable to ARE's portion of the floodwall and that, in June 2024, ARE learned "for the first time" that it should have followed the April 2020 Criteria. FAC ¶¶ 96, 128. As discussed further below, ARE's purported belief that the April 2020 Criteria were inapplicable to its portion of the floodwall is incompatible with the Flaherty Letter, which expressly states, in response to ARE's request for clarification, that the October 2020 Criteria did not supersede the April 2020 Criteria. *See* FAC Ex. 4 at 3.

## IV.    The Basis of ARE's Fraud Claims

The fraud claims turn on ARE's purported belief that the October 2020 Criteria were final and exclusive. At times, the FAC appears to rely on additional theories of fraud. *See, e.g.*, FAC ¶¶ 1-2, 113, 120-22 (alleging fraud related to reimbursement, delay, the unavailability of personnel, and the involvement of another municipal agency). But ARE does not specify the nature of these alleged frauds and/or the time, place, manner, or content of Defendants' alleged misrepresentations, omissions, acts of concealment, or duties to disclose.[4]

---

[4] For instance, ARE alleges no misrepresentations on reimbursement and only two on delay: 2018 and 2019 oral representations that "H+H did not expect ARE to delay its design or construction of the North Tower pending completion of the FPS." *Id.* ¶¶ 55, 62. But, before signing the Tenth or Eleventh Amendments, ARE discovered that there was potential for delay (and for less-than-complete reimbursement). *See id.* ¶¶ 67, 69, 78, 80, 85-86. Thus, prior inconsistent statements cannot be the basis for fraud.

Rather, ARE's fraud claims rely on its allegations that Defendants made "repeated," "express," "definitive," and "unequivocal" representations that the October 2020 Criteria were final. *Id.* ¶¶ 1, 13, 143, 152, 162, 171. As support, ARE identifies the following communications.

A. *The Flaherty Letter*

ARE centers its case around the following paragraph in the Flaherty Letter:[5]

> [ARE's question:] **Based on your schedule, when in the H+H process will the Community Flood Wall criteria become formally finalized so that no further material criteria will be added and no further material changes will be made?** [Flaherty's response:] The criteria are already settled and, based on existing information and current conditions, *it should not change*. As stated above an engineer will have to perform appropriate quality checks and calculations to refine the existing preliminary designs to ensure they conform to the criteria. *The necessary refinements are more accurately viewed as fine tuning rather than changing the designs as is typical as one moves through the design process to final construction drawings.*

*Id.* ¶ 94 (italics added in FAC). Based on the Flaherty Letter, ARE allegedly believed that the October 2020 Criteria, specifically, were both final and exclusive: "ARE regarded the October 2020 Criteria as the *only* criteria applicable to its portion of the FPS—and not the prior, more expansive criteria report issued in April 2020." *Id.* ¶ 96. However, the above-quoted paragraph refers only to the "criteria," not the October 2020 Criteria, and the prior paragraph in the Flaherty Letter directly addressed ARE's confusion about which floodwall criteria were applicable:

> [ARE's question:] **Please confirm that the design criteria issued on October 29 supersede any previously shared criteria.** [Flaherty's response:] The design criteria have not changed since they were issued to ARE on April 27, 2020 (Report dated April 26, 2020). To address multiple questions by ARE, further clarifications and redacted versions have been made culminating in the October 29, 2020 correspondence that clarified but did not supersede the prior material shared.

---

[5] *See, e.g.*, *id.* ¶¶ 152, 171 (identifying the Flaherty Letter as the basis for ARE's allegations regarding criteria finality).

AC Ex. 4 at 3. Therefore, the Flaherty Letter conclusively refutes ARE's alleged belief that the October 2020 Criteria were final and exclusive and that the April 2020 Criteria were inapplicable.

### B.  The Ker Email

ARE amended its complaint to identify a February 2021 email in which NYCEDC Assistant Vice President Brian Ker requested that ARE provide EDC with a copy of ARE's design plans to "ensure that they perform to the Floodwall criteria." FAC ¶ 106. ARE does not allege that this communication (the "Ker Email") represented the finality or exclusivity of any criteria.

### C.  The Bindler Draft

ARE further amended its complaint to identify an April 2021 draft of the Tenth Amendment in which NYCEDC attorney Deborah Bindler referred to the October 2020 Criteria (the "Bindler Draft"). *Id.* ARE alleges that these edits "reiterat[ed] that the floodwall criteria were reflected in the October 2020 Criteria." *Id.* ARE does not allege that Bindler represented that the October 2020 Criteria were final or exclusive, and the Bindler Draft itself shows that Bindler made no such representation. Bindler merely edited the definition of "Draft Specified Project Drawings and Analysis" to state that they should comply with the October 2020 Criteria. Bindler Decl. Ex. 1 at 26. Bindler also added a comment stating that the Tenth Amendment should include some explanation of the floodwall criteria. *Id.* The parties ultimately did not include Bindler's proposals. *See* Berman Decl. Ex. 3. No part of the Ground Lease refers to floodwall criteria.

### D.  The Arcadis Analysis

ARE amended its complaint to identify an analysis from H+H's engineering consultant, Arcadis (the "Arcadis Analysis"). FAC ¶ 107. ARE alleges that this document analyzed ARE's draft project drawings. *Id.* The FAC complains that Defendants and Arcadis did not indicate "that ARE incorrectly relied on the October 2020 Criteria, that ARE needed to comply with the broader criteria identified in an April 2020 report from Arcadis, or that the design criteria for H+H's portion

7

of the FPS was only in a conceptual stage and still subject to significant changes." *Id.* ARE does not allege why Defendants had a duty to disclose this information. In any case, the Arcadis Analysis refers to portions of the April 2020 Criteria that are not included in the October 2020 Criteria. *See, e.g.*, Berman Decl. Ex. 6 at 4 (Arcadis Analysis referring to "Design Criteria Table 5"). *Compare, e.g.*, Berman Decl. Ex. 5 at 5 (April 2020 Criteria including Table 5), *with* FAC Ex. 3 (October 2020 Criteria not including Table 5). If there was any ambiguity about which floodwall criteria applied, ARE could have asked for clarification.

E.  *The Oral Representation*

ARE also amended its complaint to identify the NYCEDC employees—Gbenga Dawodu and Melissa Roman Burch—who allegedly represented the floodwall criteria's finality during in-person negotiations on October 12, 2022 (the "Oral Representation"). FAC ¶ 113. ARE paraphrases the content of the Oral Representation to be that the October 2020 Criteria were final. *Id.* ARE does not allege that Dawodu or Burch represented that the October 2020 Criteria were the only applicable floodwall criteria or requirements.

## LEGAL STANDARDS

Under Rule 12(b)(6), plaintiffs bear the burden of alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

In most cases, federal courts making the plausibility determination must accept as true all factual allegations contained in a complaint. *Id.* However, Rule 9(b) requires that "a party must

state with particularity the circumstances constituting fraud." In all cases, federal courts need not credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Federal courts must be careful not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

In addition to a complaint's well-pleaded factual allegations and exhibits, the court may also rely on documents incorporated into the complaint by reference, documents "integral" to the plaintiff's claims, matters of which judicial notice may be taken, and "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit." *E.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

## DISCUSSION

ARE is a sophisticated real-estate developer that, after extensive negotiations, signed the Original Ground Lease and twelve written amendments. Yet ARE's fraud and implied-covenant claims seek to enforce a promise found nowhere in the Ground Lease: that the criteria "should not change." *See* FAC ¶¶ 94, 137-88. ARE cannot state a claim based on that representation.

The Court should dismiss ARE's First and Second Causes of Action for fraudulent inducement, because ARE identifies only one alleged misrepresentation with the particularity necessary to satisfy Rule 9(b)'s heightened pleading standard, and that statement cannot support a fraud claim under Rule 12(b)(6). The Flaherty Letter's statement that the floodwall criteria "should not change" is the only alleged misrepresentation, omission, or act of concealment that survives Rule 9(b)'s particularity requirement. But ARE cannot state a "plausible" claim for fraud under Rule 12(b)(6) based on the Flaherty Letter because: (1) it was objectively unreasonable for ARE to rely on the finality and exclusivity of the October 2020 Criteria, (2) the Flaherty Letter does not contain an actionable misrepresentation, and (3) ARE has not alleged the facts required to overcome the Second Circuit's *Bridgestone* decision.

9

The Court should also dismiss ARE's Third Cause of Action, asserted solely against H+H, for breach of the implied covenant of good faith and fair dealing, because (A) changes to the floodwall criteria could not have prevented ARE from closing on the Option, (B) the implied covenant does not encompass negotiations between the parties, and (C) there is no basis to imply a covenant that the floodwall criteria could not change.

**I.    Flaherty's Statement that the Floodwall Criteria "Should Not Change" Is the Only Purported Misrepresentation, Omission, or Act of Concealment that ARE Alleges with the Particularity Necessary to Satisfy Rule 9(b).**

Rule 9(b) is necessary to focus the Court's Rule 12(b)(6) analysis on the only purported misrepresentation, omission, or act of concealment that ARE alleges with particularity: the Flaherty Letter's statement that "[t]he criteria are already settled and, based on existing information and current conditions, *it should not change*." FAC ¶ 94. Rule 9(b) requires that plaintiffs allege the "who, what, where, when and how" of the fraud. *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21-cv-4627 (KPF), 2022 U.S. Dist. LEXIS 140874, at *25 (S.D.N.Y. Aug. 8, 2022). "Rule 9(b)'s heightened pleading requirement 'serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits.'" *Inspired Capital, LLC v. Condé Nast*, 803 Fed. App'x 436, 440 (2d Cir. 2020) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

Where fraud claims are premised on misrepresentations, plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012). Plaintiffs must provide similar specificity regarding alleged omissions, acts of concealment, and duties to disclose. *See Weaver v.*

*Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997); *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 665 (S.D.N.Y. 2007).

The length of ARE's FAC disguises its lack of particularity.[6] ARE does not plead any omission, act of concealment, or duty to disclose with particularity, because the FAC does not identify: the individuals responsible for the non-disclosures, Defendants' statements that fail to mention the pertinent information, the specific dates or time periods of the alleged non-disclosures, or the manner in which ARE was misled. *See Malmsteen*, 477 F. Supp. 2d at 665.[7] Although the FAC specifies some of this information regarding alleged omissions related to the Arcadis Analysis, ARE does not allege why Defendants had a relevant duty to disclose, what it was, or how Defendants breached it. *See id.* (requiring particularized allegations of duty to disclose); *Sehera Food Servs. Inc. v. Empire State Bldg. Co. L.L.C.*, 74 A.D.3d 542, 543 (1st Dep't 2010) ("[T]here is no duty to disclose in a non-fiduciary, arm's length transaction between a landlord and tenant." (citing *Dembeck v. 220 Cent. Park S., LLC*, 33 A.D.3d 491, 492 (2006))); *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997).

The Flaherty Letter is the only alleged misrepresentation that meets Rule 9(b)'s standard. Where the FAC identifies the date and/or speaker of any other alleged representation—such as those in the Ker Email or Bindler Draft, *see* FAC ¶ 106—ARE does not "explain why the statements were fraudulent." *Anschutz Corp.*, 690 F.3d at 108. ARE also fails to specify the content

---

[6] Indeed, the FAC fails to comply with Rule 8(a)(2)'s requirement that complaints contain "a short and plain statement of the claim," providing the Court another reason to dismiss. *See Iwachiw v. Port Auth. of N.Y. & N.J.*, 151 Fed. App'x 93, 94 (2d Cir. 2005) (summary order) ("Dismissal is generally appropriate in cases in which 'the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'").

[7] *See also Kraus USA, Inc. v. Magarik*, No. 17-cv-6541 (ER), 2020 U.S. Dist. LEXIS 83481, at *43-44 (S.D.N.Y. May 12, 2020) (dismissing for failure to plead time period with particularity); *Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.*, No. 2:15-cv-05887 (ADS), 2018 U.S. Dist. LEXIS 68792, at *33-34 (E.D.N.Y. Apr. 23, 2018) (same); *Adler v. Berg Harmon Assocs.*, 816 F. Supp. 919, 924 (S.D.N.Y.1993) (dismissing complaint that "failed to allege the substance and circumstances of the omission with sufficient particularity to give defendants fair notice of the claim").

of the Oral Representation, which is far more general than the Flaherty Letter. *See id.*; FAC ¶ 113

(paraphrasing the Oral Representation). Thus, only one alleged misrepresentation survives Rule

9(b): Flaherty's statement that the floodwall criteria "should not change." FAC ¶ 94. For the

reasons discussed below, ARE cannot state a claim for fraud based on that statement.[8]

## II.    The FAC Fails to State a Claim for Fraud, Because ARE Cannot Establish Reasonable Reliance, an Actionable Misrepresentation, or the Facts Required by the Second Circuit's *Bridgestone* Decision.

### A.  It Was Objectively Unreasonable for ARE to Rely on the Finality and Exclusivity of the October 2020 Criteria.

The Court should dismiss ARE's First and Second Causes of Action for fraudulent

inducement, because it was objectively unreasonable for ARE to have relied, based on the Flaherty

Letter or any other alleged communication from Defendants, on the finality and exclusivity of the

October 2020 Criteria. Under New York law, reasonable reliance is an essential element of any

fraud claim. *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996).

Reasonable reliance is properly considered at the motion to dismiss stage, because "the standard

is an objective one." *Brock Cap. Grp. LLC v. Siddiqui*, No. 21-cv-2070 (NRB), 2022 U.S. Dist.

LEXIS 101738, at *8-9 (S.D.N.Y. June 7, 2020) (Buchwald, D.J.). ARE's purported reliance on

the finality and exclusivity of the October 2020 Criteria was objectively unreasonable for five

reasons, which the Court should consider together. *See VisionChina Media Inc. v. Shareholder*

*Representative Servs., LLC*, 109 A.D.3d 49, 57 (1st Dep't 2013) ("[R]eliance must be found to be

justifiable under all the circumstances before a complaint can be found to state a cause of action

in fraud.").

---

[8] Even if ARE had alleged any other misrepresentation, omission, or act of concealment with particularity, those allegations would fail to state a claim for fraud under Rule 12(b)(6) for the reasons discussed below.

*First*, the Cooperation Clause governs the subject matter of the alleged fraud and, under New York law, it is objectively unreasonable for a party to a contract to rely on extracontractual representations inconsistent with the subsequent contract language. *See, e.g.*, *CapLOC, LLC v. McCord*, No. 17-cv-5788 (AT), 2018 U.S. Dist. LEXIS 99321, at *29 (S.D.N.Y. June 12, 2018) (collecting cases); *Humble Oil & Ref. Co. v. Jaybert Esso Serv. Station, Inc.*, 30 A.D.2d 952, 952 (1st Dep't 1968) (holding reliance unreasonable where the "written instrument contains terms different from those allegedly orally represented"). The Tenth Amendment's Cooperation Clause is the only Ground Lease provision regarding the floodwall, and it is inconsistent with ARE's claim of final criteria. The Cooperation Clause recognizes that nothing is set in stone and that the parties might not succeed in reaching "mutually agreeable written parameters related to Landlord's proposed flood mitigation requirements." Berman Decl. Ex. 3 § 4 (Tenth Amendment); *see also Clifton v. Vista Computer Services, LLC*, No. 01-cv-10206 (JSM), 2002 U.S. Dist. LEXIS 12977, at *8-12 (S.D.N.Y. July 16, 2002) (holding that, where "the contract acknowledge[d] the possibility that there will be no financing, a promise about what will happen to that financing" was not a promise the plaintiff could reasonably rely upon).

In addition, the Bindler Draft shows that the parties expressly considered referring to the floodwall criteria in the Tenth Amendment. *See* FAC ¶ 106; Bindler Decl. Ex. 1 at 26 (Bindler Draft). The parties chose not to do so. "[A] plaintiff may not claim that it acted on the basis of mistaken knowledge when it concerns an issue that 'was expressly considered . . . under the thoroughly negotiated contractual agreements' . . . ." *Michael Rapaport & Michael David Prods. v. Barstool Sports, Inc.*, No. 18-cv-8783 (NRB), 2021 U.S. Dist. LEXIS 119045, at *12-13 (S.D.N.Y. June 25, 2021) (first ellipsis in original) (quoting *Mariano v. CVI Invs. Inc.*, 809 F. App'x 23, 27 (2d Cir. 2020) (summary order)).

13

There is even a direct conflict in this case between the alleged misrepresentation and the contract language, because ARE has not distinguished the floodwall "criteria" that were supposedly final from the "flood mitigation requirements" the Cooperation Clause says were proposed. *See* FAC ¶¶ 121, 124, 127, 139, 151, 170, 174. "[A]ny reliance by . . . a sophisticated businessman, upon representations contrary to the plain language of the agreements he was signing would therefore be patently unreasonable." *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999), *aff'd*, *HSBC Bank v. Hales*, 4 Fed. App'x 15 (2d Cir. 2001). Defendants identified this problem in their original motion to dismiss, and ARE did not add any facts distinguishing the floodwall "criteria" from the "flood mitigation requirements."

**Second**, it is objectively unreasonable to rely on ambiguous or indefinite representations. *E.g.*, *Fierro v. Gallucci*, No. 06-cv-5189 (JFB), 2010 U.S. Dist. LEXIS 27664, at *42-43 (E.D.N.Y. Mar. 24, 2010) (citing *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211 (1978)); *Van Kleeck v. Hammond*, 25 A.D.3d 941, 943 (3d Dep't 2006); *see also Hollander v. Cayton*, 145 A.D.2d 605, 606 (2d Dep't 1988) (holding that "ambiguous" statements were nonactionable opinion). Flaherty conditioned her statement that the criteria "should not change" on "existing information and current conditions." FAC ¶ 94 (emphasis omitted). That statement is ambiguous, because Flaherty does not specify what information or conditions could affect her opinion. Flaherty also uses the word "should," leaving open the possibility that the floodwall criteria could change in the future. Such "vague or equivocal" language is not actionable as fraud. *Fishbaum v. Liz Claiborne, Inc.*, No. 98-9396, 1999 U.S. App. LEXIS 18155, at *8 (2d Cir. July 27, 1999); *see also People v. Minott*, 94 N.Y.2d 784, 786 (1999) (holding "[e]quivocal and subjective language" nonactionable).

**Third**, ARE has misinterpreted the Flaherty Letter in fundamental ways, and reliance on those purported misunderstandings is objectively unreasonable. Where a plaintiff could have discovered the true nature of a transaction "by the exercise of ordinary intelligence," that plaintiff cannot "complain that he was induced to enter into the transaction by misrepresentations." *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 234 (1st Dep't 1996). ARE allegedly believed that the floodwall criteria could not change in the future, but Flaherty said only that the criteria "should" not change. *See* FAC ¶¶ 94, 96. "Should" is an expression of "what is probable or expected"—not an expression of certainty. *Should*, Merriam-Webster, https://www.merriam-webster.com/dictionary/should (last accessed Mar. 6, 2025 4:44 PM). ARE also allegedly believed that the Flaherty Letter represented that only the October 2020 Criteria applied to ARE's portion of the floodwall. FAC ¶ 96. But the Flaherty Letter directly addressed ARE's request for confirmation that the Oct 2020 Criteria superseded all previous floodwall criteria, and Flaherty said no. FAC Ex. 4 at 3. ARE's alleged misunderstanding of the Flaherty Letter is objectively unreasonable, because it has no basis in Flaherty's words and is incompatible with "the exercise of ordinary intelligence." *Abrahami*, 224 A.D.2d at 234. To the extent that there is ambiguity in the Flaherty Letter justifying ARE's purported misunderstandings, that ambiguity precludes reasonable reliance for the reasons above.

**Fourth**, "as a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 194-95 (1st Dep't 2012) (dismissing fraud claim on motion to dismiss and collecting cases). In *Hernandez v. Warsinske*, a New York County Supreme Court dismissed a fraud claim in part because the plaintiff did not "request any information" on the relevant subject.

Index No. 162212/2019, 2021 N.Y. Misc. LEXIS 274, at *5 (Sup. Ct. N.Y. Cty. Jan. 22, 2021). Here, ARE asked if the October 2020 Criteria superseded the April 2020 Criteria, and the Flaherty Letter said no. FAC Ex. 4 at 3. If ARE was still confused about which criteria applied to its potential section of the floodwall, ARE should have asked for further clarification.

*Fifth*, the context of the parties' allegedly decade-long negotiation of the Option demonstrates the unreasonableness of ARE's alleged reliance on the finality and exclusivity of the October 2020 Criteria. "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Brock Cap. Grp.*, 2022 U.S. Dist. LEXIS 101738, at *8-9. The complexity of the transaction cannot be overstated; it involves, among other things, the development of lab space for a specialized market, incorporation of the North Tower into the existing ARE campus, and, potentially, the integration of part of a larger, possibly FEMA-funded floodwall into the North Tower's design. FAC ¶¶ 10-11, 86. The sophistication of ARE and its counsel are also difficult to overstate, with ARE alleging itself to be "the foremost developer of specialized commercial life science properties in the world." *Id.* ¶ 4. And the Ground Lease expressly provides that the parties agreed to be bound by and to rely on only written, signed amendments. *See* Ex. 1 §§ 18.2, 31.1, 41.11. The parties complied with those provisions, amending the Ground Lease twelve times in writing. *See* FAC ¶ 119. If a sophisticated party like ARE wished to rely on the finality and exclusivity of the October 2020 Criteria, it would have insisted on including such terms in one of the parties' twelve written, signed amendments to the Ground Lease.

### B.  The FAC Fails to Adequately Allege an Actionable Misrepresentation.

ARE also cannot state a claim for fraud based on the Flaherty Letter, because Flaherty did not make an actionable misrepresentation. Under New York law, a material misrepresentation is

an essential element of any fraud claim. *Bridgestone*, 98 F.3d at 19. A plaintiff's failure to plausibly allege this element warrants dismissal. *See, e.g.*, *Pacnet Network Ltd. v. KDDI Corp.*, 78 A.D.3d 478, 479 (1st Dep't 2010) (affirming dismissal of fraud claim based on nonactionable misrepresentation). The Flaherty Letter is not actionable for at least three reasons.

First, under New York law, misrepresentations of "existing fact" can sustain a fraud claim, but misrepresentations of "future expectations" cannot. *Deutsche Bank Nat'l Trust Co. v. Sinclair*, 68 A.D.3d 914, 916 (2d Dep't 2009); *see also, e.g.*, *Sejin Precision Indus.*, 235 F. Supp. 3d at 554-55 ("[A] prediction of future events . . . cannot sustain a fraud claim."); *Dragon Inv. Co. II LLC v. Shanahan*, 49 A.D.3d 403, 403 (1st Dep't 2008) (similar). Any representation of the floodwall criteria's finality relates to opinion or expectations about future events: whether the criteria would change before the parties reached a final agreement memorialized in a written contract.

The Flaherty Letter's language highlights this point. As stated above, Flaherty represented that the criteria "should not change," and "should" is an expression of "what is probable or expected." *Supra* at 15. "[S]tatements of prediction or expectation" cannot sustain a fraud claim. *Pacnet Network Ltd.*, 78 A.D.3d at 479. "[A]n actionable misrepresentation during a contractual negotiation must be factual in nature and not promissory or relating to future events that might never come to fruition." *President Container Grp. 11, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 166 (S.D.N.Y. 2020); *see also Int'l Fin. Corp. v. Carrera Holds. Inc.*, 82 A.D.3d 641, 641-42 (1st Dep't 2011) (holding "expressions of hope and opinion" nonactionable).

Second, ARE cannot establish an actionable misrepresentation, because ARE has not identified any statements that were false or misleading. "[P]laintiffs must do more than simply assert that a particular statement is false or misleading; rather 'they must demonstrate with

specificity why and how that is so.'" *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 218, 226 (S.D.N.Y. 2020) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).

Flaherty's statement that the criteria "should not change" was neither false when made nor false "by hindsight." *See Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 41 (S.D.N.Y. 2023) (dismissing fraud claims "[b]ecause the FAC does not plead a false or misleading act"); *Green Star Energy Sols., LLC v. Edison Props., LLC*, No. 21-cv-2682 (LJL), 2022 U.S. Dist. LEXIS 196738, at *25-27 (S.D.N.Y. 2022) (holding "falsity by hindsight" insufficient to state fraud claim). ARE alleges that Flaherty's statement was false when made because H+H had not formally designed the floodwall, had not received FEMA sign off on the October 2020 Criteria or H+H's retention of Arcadis, had not resolved certain drainage issues, and knew sign off was required from the NYC Department of Design and Construction. FAC ¶¶ 14, 109, 120-22. But the relevant portion of the Flaherty Letter does not make representations about any of these issues; it says only that the criteria "should not change." *Id.*  ¶ 94; *see also Chapman v. Mueller Water Prods.*, 466 F. Supp. 3d 382, 414 (S.D.N.Y. 2020) (granting motion to dismiss securities fraud claims, because the plaintiff could not establish falsity with unsupported allegations or with allegations contradicted by other portions of the complaint). Flaherty made that statement over four years ago, and ARE has not shown how the floodwall criteria have changed materially since then.[9]

Finally, even if ARE could show that the floodwall criteria have changed, Flaherty's representation is too indefinite and ambiguous to establish the misrepresentation element. *See, e.g.*, *D.S. Magic Tech, LLC v. 2720 LLC*, No. 15-341, 2015 N.Y. Misc. LEXIS 4174, at *2 (1st Dep't

---

[9] As stated above, ARE alleges Defendants changed the floodwall criteria in 2023 and 2024 by asking ARE to follow the April 2020 Criteria. *See supra* at 5; FAC ¶¶ 96, 119-28. But the Flaherty Letter expressly states that the October 2020 Criteria did not supersede the April 2020 Criteria. FAC Ex. 4 at 3. Thus, the April 2020 Criteria are among the floodwall criteria Flaherty stated "should not change," *see id.*, and ARE has not alleged material changes to them.

Nov. 19, 2019) (citing *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 575 (1986)); *Rizkallah v. Forward Air, Inc.*, No. 02-cv-2448 (PGG), 2009 U.S. Dist. LEXIS 86999, at \*17 (S.D.N.Y. Sept. 21, 2009). It is impossible to prove the truth or falsity of a statement that the criteria "should not change." *See Hollander*, 145 A.D.2d at 606 (holding that a misrepresentation cannot sustain a fraud claim if it is "indefinite, ambiguous and incapable of being objectively characterized as true or false"); *Amuze v. Better Bus. Bureau*, Index No. 651529/2022, 2023 N.Y. Misc. LEXIS 958, at \*12 (Sup. Ct. N.Y. Cty. Mar. 3, 2023) ("[T]he statements referring to plaintiff as a fraud and guilty of unethical business statements do not have a precise meaning and are exceedingly broad under the circumstances.").

     C.   *The FAC Fails to State a Claim for Fraudulent Inducement, Because ARE Does Not Plead the Facts Required by the Second Circuit's* Bridgestone *Decision.*

"In addition to proving the elements of fraudulent inducement, a party bears an additional burden when arguing that it was induced to enter into a contract by way of a misrepresentation." *Osan Ltd. v. Accenture Llp*, 454 F. Supp. 2d 46, 52 (E.D.N.Y. 2006); *see also Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017) (similar).[10] "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone*, 98 F.3d at 20.

ARE does not meet any of these so-called *Bridgestone* exceptions. The FAC identifies no special legal duty, "such as those arising from a fiduciary relationship." *Sequoia Healthcare Servs.,*

---

[10] *See also Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual and cannot be repackaged as tort claims." (internal quotations omitted)); *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) (similar); *Telesco v. Neuman*, No. 14-cv-3480 (VB), 2015 U.S. Dist. LEXIS 66008, at \*12 (S.D.N.Y. Mar. 11, 2015) ("Courts dismiss fraud claims as duplicative of breach of contract claims even when breach of contract claims cannot be maintained.").

*LLC v. Essex Capital Corp.*, No. 17-cv-6640 (NRB), 2018 U.S. Dist. LEXIS 116265, at *12 (S.D.N.Y. July 11, 2018) (Buchwald, D.J.); *see also* Berman Decl. Ex. 1 § 41.4 (limiting the parties to "a landlord and tenant relationship"). ARE also does not seek special damages unrecoverable as contract damages. Although ARE asserts in conclusory fashion that it suffered "[i]ndirect and consequential damages," FAC at 59, ARE "never pleads with particularity what specific special damages it suffered." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *12-13; *see also* F. R. Civ. P. 9(g) (requiring that special damages "be specifically stated").

Nor has ARE alleged any misrepresentations collateral or extraneous to the Ground Lease. When determining whether an alleged misrepresentation satisfies the second *Bridgestone* exception, "the first and threshold question is whether the alleged misrepresentation is a statement of present fact, as opposed to one of future intent." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *13-14 (quoting *Koch Indus., Inc. v. Hoechst AG*, 727 F. Supp. 2d 199, 215 (S.D.N.Y. 2010) (Buchwald, D.J.)). As stated above, Flaherty's representations are of future intent. *Supra* at 17; *see also Remuda Jet Five LLC v. Empressa Brasileira De Aeronautica, S.A.*, No. 10-cv-8369 (NRB), 2012 U.S. Dist. LEXIS 48736, at *47 (S.D.N.Y. 2012) (Buchwald, D.J.) (dismissing representation that airplane "would have a range of at least 17100 nautical miles" on this basis).

Even when the alleged misrepresentation concerns present facts, a plaintiff cannot establish a misrepresentation collateral or extraneous to the contract if "the terms of the parties' agreement preclude a fraud suit on the basis of the alleged misstatement." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *14 (quoting *Koch Indus.*, 727 F. Supp. 2d at 214); *see also Kriegel v. Donelli*, No. 11-cv-9160 (ER), 2014 U.S. Dist. LEXIS 90086, at *43 (S.D.N.Y. 2014) (dismissing on this basis). "A merger clause or an express provision barring suit, or a contractual

provision bearing directly on the subject of the misstatement, will be sufficient to preclude a subsequent fraud claim." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *14 (internal citations omitted).

The Ground Lease precludes ARE's fraud claims for both reasons: it includes a merger clause and a contractual provision bearing directly on the subject of the alleged misstatement. In addition to the merger clause, Ex. 1 § 31.1, the Ground Lease provides that the parties may not alter the terms of the Ground Lease "except by a written instrument of change . . . executed by the other party," *id.* § 41.11. Furthermore, ARE's "position is clearly at odds with the terms of the" Ground Lease, under which ARE "disclaimed all extraneous representations." *Koch Indus.*, 727 F. Supp. 2d at 214; *see also* Ex. 1 § 18.2 (providing that the Landlord made no representations regarding "the transaction contemplated by this Lease, [and] Tenant has relied on no such representations").[11] These provisions demonstrate the parties' intent to be bound only by written, signed amendments to the Ground Lease.

Even if the Ground Lease did not include these provisions, it would preclude ARE's fraud claims, because the Cooperation Clause is a "provision bearing directly on the subject of the [alleged] misstatement." *Sequoia Healthcare Servs.*, 2018 U.S. Dist. LEXIS 116265, at *13. As stated above, any belief that the floodwall criteria were set in stone conflicts with the Cooperation Clause's reference to "Landlord's <u>proposed</u> flood mitigation requirements." Ex. 3 § 4(b) (emphasis added); *see also, e.g.*, *supra* at 14; *Lam v. Am. Express Co.*, 265 F. Supp. 2d 225, 231 (S.D.N.Y. 2003) (fraud claims not collateral or extraneous where alleged misrepresentations contradicted contract's terms); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 326 (S.D.N.Y. 2002) (same). However, direct conflict is not necessary for the Cooperation Clause to preclude a fraud suit under

---

[11] The Tenth and Eleventh Amendments, executed after the Flaherty Letter, became part of the larger Ground Lease and affirmatively ratified and confirmed the above-cited provisions. *See* Ex. 3 §§ 11(a)-(b); Ex. 4 §§ 3(a)-(b).

*Bridgestone*. *See, e.g.*, *Four Finger Art Factory, Inc. v. DiNicola*, No. 99-cv-1259 (JGK), 2000 U.S. Dist. LEXIS 1221, at *15-16 (S.D.N.Y. Feb. 9, 2000) (dismissing fraud claims where the alleged misrepresentations "concern matters which are specifically covered by the contract"); *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12-cv-6017 (KBF), 2013 U.S. Dist. LEXIS 12619, at *10 (S.D.N.Y. Jan. 18, 2013) (dismissing fraud claims where alleged misrepresentations were "intrinsic" to contractual obligations). Under *Bridgestone*, it is enough that the factual basis of ARE's fraud claims—Flaherty's statement about the floodwall's design process—falls within the "purview" of the Cooperation Clause. *In re Enron Corp.*, 2005 U.S. Dist. LEXIS 2134, at *37 (S.D.N.Y. Feb. 14, 2005) (Buchwald, D.J.).

As a "sophisticated entit[y], represented by counsel, who could easily have negotiated different terms," *Koch Indus.*, 727 F. Supp. 2d at 216, ARE can enforce only the terms of the Ground Lease. If the Court "were to rule otherwise, the strong New York policy, giving autonomy to contracting parties to allocate risks, and rights, obligations, warranties and disclaimers, as they see fit, would be compromised." *DynCorp*, 215 F. Supp. 2d at 326. Rather than countenance ARE's efforts to rewrite the Ground Lease, the Court should dismiss ARE's fraud claims.

## III. ARE Has Not Stated a Claim for Breach of the Implied Covenant Under Rule 12(b)(6).

The Court should dismiss ARE's implied-covenant claim for three independent reasons: (A) the FAC does not allege facts demonstrating that H+H deprived ARE of the benefit of its bargain, (B) ARE impermissibly premises this claim on H+H's negotiating position, and (C) there is no lawful basis to imply a covenant that the floodwall criteria could not change.

### A. The FAC Fails to State an Implied-Covenant Claim, Because ARE Fails to Plausibly Plead that H+H Deprived ARE of the Benefit of Its Bargain.

Under New York law, implied-covenant claims may proceed only where one party's conduct deprived the other party of the benefit of its bargain. *E.g.*, *Butvin v. DoubleClick, Inc.*, No.

99-cv-4727 (JFK), 2001 U.S. Dist. LEXIS 2318, at *28-29 (S.D.N.Y. Mar. 5, 2001). Stated differently, such claims must involve "efforts by one party to a contract to subvert the contract itself," and courts applying New York law cannot "impose an obligation that was not agreed to by the parties." *Id.* at *28-33.

ARE fails to plausibly plead that H+H deprived it of the benefit of its bargain, which was an Option to develop the North Tower. ARE claims that, by allegedly changing the floodwall criteria, H+H breached an alleged implied covenant that H+H "refrain from taking any action to obstruct or interfere with ARE's . . . closing on the Option and development of the North Tower." FAC ¶¶ 183-86. As stated above, ARE has not adequately alleged a material change to the criteria. *Supra* at 5. Even if it had, the contractually agreed upon elements necessary for ARE to close on the Option do not mention the floodwall, let alone the floodwall criteria. *See* Ex. 2 Arts. 3, 5-6. The only portion of the Ground Lease that discusses the floodwall is the Cooperation Clause, which does not create any closing requirements related to the floodwall or require that the floodwall be included in the North Tower. *See* Ex. 3 § 4. To the contrary, the Cooperation Clause provides that the parties shall cooperate "to attempt" to reach mutual agreement regarding the floodwall. *Id.* The Cooperation Clause thus expressly contemplates that the parties might not reach agreement on floodwall terms. Accordingly, changes to the criteria could not have prevented ARE from closing on the Option and developing the North Tower without the floodwall.

>    B.   *The FAC Fails to State an Implied-Covenant Claim, Because ARE Relies on Conduct During Negotiation of the Proposed Thirteenth Amendment.*

ARE premises its implied-covenant claim on H+H's negotiating position regarding the proposed Thirteenth Amendment. FAC ¶¶ 119, 123-24, 186. But the implied covenant "is limited to performance under a contract and does not encompass future dealings or negotiations between the parties." *Bank of N.Y. v. Sasson,* 786 F. Supp. 349, 354 (S.D.N.Y. 1992). "Nothing in the duty

of good faith requires that parties to a negotiation propose only such terms as the other party is happy with" or "undermine[s] a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Warner Theatre Assocs. Ltd. Pshp. v. Metropolitan Life Ins. Co.*, No. 97-cv-4914 (SS), 1997 U.S. Dist. LEXIS 17217, at *18-19 (S.D.N.Y. 1997) (internal quotations omitted) (Sotomayor, D.J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998). As a matter of law, ARE fails to state a claim that H+H breached the implied covenant by allegedly altering the criteria during negotiation of the proposed, and ultimately unexecuted, Thirteenth Amendment.

### C. The FAC Fails to State an Implied-Covenant Claim, Because There Is No Contractual Basis to Imply a Covenant that the Floodwall Criteria Could Not Change After October 2020.

Insofar as ARE seeks to imply a covenant that the criteria could not change after October 2020, ARE has not carried its "'heavy burden' to 'prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is <u>in fact implicit</u> in the agreement viewed as a whole.'" *Singh v. City of N.Y.*, 40 N.Y.3d 138, 146 (2023) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978)). "Clarity and predictability are particularly important in the interpretation of contracts . . . and 'this is perhaps true in real property more than any other area of the law.'" *Moran v. Erk*, 11 N.Y.3d 452, 457 (2008) (quoting *Holy Props. v. Cole Prods.*, 87 N.Y.2d 130, 134 (1995)).

ARE provides no lawful basis to imply a covenant that the floodwall criteria could not change after October 2020. ARE cannot imply such a covenant based on alleged extracontractual promises because, when a merger clause is present, the obligation sought to be enforced must be "so interwoven in the whole writing of a contract as to be necessary for the effectuation of the purposes of the contract." *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355 (1st Dep't 2004) (internal quotations and brackets omitted); *accord M/A-Com Security Corp. v. Galesi*, 904 F.2d

134, 136 (2d Cir. 1990); *see also* Ex. 1 §§ 18.2, 31.1, 41.11 (the Ground Lease's no-other-representations, merger, and no-oral-modification clauses). Even in the absence of a merger or integration clause, parol evidence may not be considered to vary the language of a written contract. *Wayland Inv. Fund, LLC v. Millenium Sea Carriers, LLC*, 111 F. Supp. 2d 450, 453-54 (S.D.N.Y. 2000). In other words, the basis for implying a covenant must come from the Ground Lease itself. Nothing in the Ground Lease implies a covenant that the criteria could not change.

To the contrary, the Ground Lease shows that the floodwall was subject to further negotiation. The Cooperation Clause—the sole Ground Lease provision to address the floodwall—recognizes that the floodwall criteria were "proposed" and subject to design review and negotiation. Berman Decl. Ex. 3 § 4(b). That provision's "attempt to reach" language also forecloses any implication of unchanging criteria. *Id.* Thus, any alleged covenant that the floodwall criteria could not change would be inconsistent with the terms of the Ground Lease. The implied covenant cannot be used to "imply obligations inconsistent with other terms of the contractual relationship.'" *Singh*, 40 N.Y.3d at 146; *see also JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (holding that there can be no breach of the implied covenant when "the defendant acts in accordance with the express terms of the contract").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the First, Second, and Third Causes of Action in the FAC.

Dated:      New York, New York
            March 17, 2025

Respectfully submitted,

**MURIEL GOODE-TRUFANT**
Corporation Counsel of
the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2489

By:    /s/  David Angelatos
       David Angelatos
       *Assistant Corporation Counsel*

26

## **LOCAL CIVIL RULE 7.1(c) CERTIFICATION**

I certify that the total word count of this Memorandum of Law—exclusive of caption, table of contents, table of authorities, signature block, and this certificate—is 8,502, which complies with Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. I relied on the word count of the word-processing system used to prepare this document.

Dated:      New York, New York
            March 17, 2025

/s/  David Angelatos
David Angelatos

27